## FULLER ET AL. *v.* COUNTY COMMISSIONERS OF BALTIMORE COUNTY ET AL.

[No. 235, October Term, 1956.]

170

*Decided June 26, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Alexander Harvey, II,* with whom was *Frank L. Fuller, III,* on the brief, for the appellants.

*Richard C. Murray,* with whom were *Francis T. Peach* and *Walter R. Haile* on the brief, for the County Commissioners, appellee.

*Kenneth C. Proctor* and *Paul R. Kach* for the Woodcroft Realty Company, Inc., appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County dismissing a bill of complaint which sought an injunction to require the relatively low density residential zoning of the whole of a 48-acre tract located along the Timonium Road in that County and to prevent its use for higher

density residential zoning. This tract, now named "Emerald Acres", is the same land, then called "Enchanted Acres", that was involved in *Board of County Com'rs v. Oxford Development Co.,* 209 Md. 373, 121 A. 2d 239.

The appellants are property owners who reside along the Timonium Road, a short distance west of the point where the new Harrisburg Expressway crosses the Timonium Road by means of an overpass, and their properties either adjoin Emerald Acres or are directly across the road from it.

In the latter part of 1952, the Baltimore County Planning Commission ("Planning Commission") undertook an extensive study of land used in Baltimore County for the purpose of preparing a coordinated master plan for the County, which would serve as the basis for a completely new zoning map. On March 30, 1955, in furtherance of such project, the County Commissioners of Baltimore County ("County Commissioners") adopted new zoning regulations and restrictions for the entire County. Under the new regulations a number of classifications were established, among which were:

R-40 Zone Residence (one-family to each acre),

R-20 Zone Residence (one-family to each one-half acre),

R-10 Zone Residence (one-family to each one-quarter acre),

R-6 Zone Residence (one- and two-family houses with a lot of 6,000 square feet).

Following the adoption of these Regulations, it became necessary to prepare new zoning maps for each district.

The Planning Commission, after making a study of the situation in the Eighth District, in which Emerald Acres is located, came to the conclusion that the Harrisburg Expressway was the logical boundary for the high density residential area to the east of that highway and that the R-40 classification, the lowest density residential classification, would be proper for the area to the west thereof. A map was drawn accordingly, but at a subsequent time the Planning Commission reconsidered the plan and changed the recommendation to an R-20 zone. This latter recommendation was transmitted to the Zoning Commissioner.

The Zoning Commissioner, after considering the conclusions of the Planning Commission, and holding a hearing at which the then owner of Emerald Acres sought a high density classification for that tract and after making his own study of the local situation, recommended to the County Commissioners in a final report that the land involved in this suit be zoned partially for R-6, partially for R-10, and partially for R-20.

The County Commissioners on December 6, 1955, held a public hearing to hear objections to the Zoning Commissioner's final report. One of the appellants appeared and protested the adoption of the final report, but two weeks later the County Commissioners approved and signed a new zoning map incorporating the recommendations of the Zoning Commissioner.

The appellants then filed their bill of complaint seeking an injunction to enjoin the use of the land as newly rezoned and seeking to force the County Commissioners to classify the land as recommended by the Planning Commission. After a full hearing in open court, the Circuit Court for Baltimore County entered its decree dismissing the bill of complaint. The appeal is from this decree.

The standing of the plaintiffs to sue was challenged by the defendants, but we think it is sufficient. The plaintiffs alleged that the value of their respective properties would be damaged and depreciated by the zoning action of the County Commissioners. The defendants failed to deny this allegation and thereby admitted it. Former General Equity Rule 20, now Rule 372 b of the Maryland Rules. Similar allegations were held sufficient against demurrer in *Crozier v. County Com'rs of Prince George's County,* 202 Md. 501, 97 A. 2d 296. Cf. *Loughborough Development Corp. v. Rivermass Corp.,* 213 Md. 239, 131 A. 2d 461.

On this appeal, the appellants raise two issues: (1) whether or not the zoning adopted by the County Commissioners is valid, and (2) whether or not the trial court committed reversible error in refusing to admit certain evidence.

In adopting the new zoning map for the entire Eighth District, the County Commissioners were acting in a legis-

lative capacity. The Court's function to review such action is restricted and its scope is narrow. The legislative exercise of the police power is presumed to be valid and a successful attack upon it must show affirmatively and clearly that it is arbitrary, capricious, discriminatory or illegal. *Grant v. City of Baltimore,* 212 Md. 301, 129 A. 2d 363; *Erdman v. Board of Zoning Appeals,* 212 Md. 288, 129 A. 2d 124, and cases there cited.

It was admitted by the appellants that no question of health, safety or morals is involved and they did not offer any evidence that the increased density of the population in the area would create any traffic hazards or like problems. The appellants' principal contention is that the action of the County Commissioners is the negation of a comprehensive plan and amounts to spot zoning since Emerald Acres is the only land on the western side of the Harrisburg Expressway to be zoned R-6 or R-10. There were two small areas in the neighborhood which were zoned for business use. That zoning is under attack, we are informed, in other litigation. Across from Emerald Acres on the east side of the expressway there are a number of properties devoted to commercial and industrial enterprises. These enterprises include the Timonium Drive-In movie (which has an outdoor screen that can be seen from west of the expressway), the main line tracks of the Northern Central line of the Pennsylvania Railroad, a storage place for fences, and a large area zoned for industrial uses. The Zoning Commissioner testified that the existence of this industrial area would create a demand for higher density housing within the district.

While it is true that Emerald Acres is the only land in the vicinity west of the expressway zoned for such residential density as R-10 or R-6, there is evidence that Emerald Acres is different in character from the other land in the area. The testimony shows that the land in question is low-lying, with a tendency to be swampy; that the land does not lend itself to a high class type development; that it is the only piece of land in the area, with a few exceptions, for which sewerage and water are available. (The owners of the other land hav-

ing sewerage and water available did not request a high density zoning, as the owners of Emerald Acres did.)

Mr. Archibald C. Rogers, a zoning expert, in testifying for the appellants, stated that the historical pattern of zoning was to have a high density zone next to an industrial zone; that if the entire area in question had been zoned R-6 it would not be spot zoning; that if water and sewerage facilities were only available to Emerald Acres plus an additional small amount of acreage west of the expressway, he would not characterize the action of the County as spot zoning.

The evidence shows some basis for classifying Emerald Acres differently from neighboring property west of the expressway, and we cannot say that the action of the County Commissioners amounts to spot zoning or that it is necessarily inconsistent with a comprehensive plan. For a thorough discussion of spot zoning see our recent opinion in *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A. 2d 83.

The record in this case fails to establish that the County Commissioners acted in an arbitrary, capricious, discriminatory or illegal manner. Their decision, even though we may not agree with it, is, we think, fairly debatable and in such a situation we cannot substitute our judgment for that of the zoning authorities. *Montgomery County Council v. Scrimgeour*, 211 Md. 306, 312, 127 A. 2d 528, 531, and cases there cited.

The appellants claim that the lower court erred in not allowing testimony to be admitted showing that the president of the corporation that now owns Emerald Acres made substantial contributions to the political campaigns of the County Commissioners in 1954. The present owners did not own the property when the Zoning Commissioner's recommendation was first approved by the County Commissioners and there is nothing to show that the Commissioners even knew they were negotiating for it. There was no allegation of fraud in the bill of complaint and such a charge is disclaimed in the appellants' brief. Under these circumstances there was no foundation for the admission of such testimony. *Knell v. Briscoe*, 49 Md. 414, relied upon by the appellants, was a case in which alleged fraud was really the gist of the action.

Here it was not alleged at all, and the rejected testimony therefore does not appear relevant to any issue in the case. See *Nelson v. Seiler*, 154 Md. 63, 139 A. 564. In that case the plaintiff was injured when struck by an automobile driven by one defendant and owned by the other. The second defendant was the father of the first. The declaration asserted liability against the father on a theory of agency. At the trial the plaintiff sought on cross-examination of the son, to get into evidence a list of convictions and of some arrests not resulting in convictions of the son, and to show that the father had knowledge of the convictions and arrests, in order to fasten liability on the father on the ground that he was negligent in entrusting his automobile to an incompetent or dangerous driver. Without passing on the validity of the asserted theory of liability, this Court held the evidence inadmissible in the circumstances stated. In the same case this Court also held irrelevant to any issue there presented, and hence inadmissible, any evidence intended to show that the driver of the automobile was the son of a man of means. In the present case the evidence offered, in the absence of any charge of fraud, collusion or corruption, does not seem relevant to the issues presented. If the appellants felt such charges to be warranted, they could have stated them directly, and a different question with regard to the admissibility of this evidence might have been presented.

The appellees raise the defense of laches and, in addition, they challenge the relief sought against the County Commissioners on the ground that the court cannot require them to take legislative action. In view of our conclusions above stated, there is no need to pass on these questions.

For the reasons set out above, the decree of the lower court must be affirmed.

*Decree affirmed, with costs.*