## HEWITT et al. *v.* COUNTY COMMISSIONERS OF BALTIMORE COUNTY et al.

[No. 192, September Term, 1958.]

50

*Decided May 11, 1959.*

*Motion for rehearing filed June 10, 1959, denied and opinion modified July 2, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*J. Nicholas Shriver, Jr.,* with whom were *J. Paul Bright, Jr.,* and *Cross & Shriver* on the brief, for the appellants.

*Kenneth C. Proctor* and *Austin W. Brizendine,* with whom were *Johnson Bowie, A. Gordon Boone,* and *Proctor, Royston & Mueller* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County dismissing a bill of complaint which sought to enjoin the use of certain property for commercial purposes and to require the County Commissioners to restore it to the residential use classification which had been recommended by the Zoning Commissioner. The property consists of two adjoining residentially improved lots totaling approximately 19 acres and lying on the south side of Timonium Road immediately west of the Baltimore-Harrisburg Expressway in the Eighth Election District of Baltimore County. The appellants are neighboring property owners who reside along both sides of Timonium Road west of the Expressway.

Ever since the original zoning of Baltimore County in 1945 the subject properties as well as all of the parcels of land now owned by the appellants have been zoned for residential use ("A" Residential). On March 30, 1955, the County Commissioners of Baltimore County ("County Commissioners") upon recommendation by the Zoning Commission pursuant to Section 366 (c) of the Code of Public Laws of Baltimore County (1948 Ed.) (§ 532 (c) of the 1955 Ed.) promulgated new zoning regulations and restrictions for the entire County. Accordingly, the Baltimore County Planning Commission ("Planning Commission") prepared a new map for a large portion of the Eighth Election District proposing the boundaries of the new use districts on the basis of an extensive study of land uses begun in the latter part of 1952. See *Huff v. Board of Zoning Appeals of Baltimore County,* 214 Md. 48, 133 A. 2d 83, and *Fuller v. County Commissioners,* 214 Md. 168, 133 A. 2d 397, for comparatively recent zoning history in Baltimore County.

On the above map or plan, which was thereafter submitted to the Zoning Commissioner, the entire area of fifteen to twenty square miles west of the Baltimore-Harrisburg Expressway bounded on the north by Tufton Avenue and Shawan Road, on the west by Greenspring Avenue and on the south by Seminary Avenue, was recommended for residential zoning. Mr. Malcolm Dill, who was then Director

of the Planning Commission, testified that the Commission could see "no apparent need for commercial zoning west of the Expressway in view of the expected low density development in that extensive area." On the other hand, substantial areas east of the Expressway in the vicinity of Timonium Road and the subject properties were designated for commercial and industrial uses and are being partly utilized for such purposes at present.

The Zoning Commissioner, pursuant to the statute, prepared his preliminary report proposing certain minor changes in the Planning Commission's map, held a public hearing thereon on August 8, 1955, and on November 17, 1955, submitted his final report with recommendations to the County Commissioners. In this report he concurred in the conclusion of the Planning Commission that all the land to the west of the Expressway should be retained in a residential category, although he recommended that R-20 density be permitted throughout the major portion of a 3,000 foot strip west of the Expressway, which included the Fowble and Gill properties and part of the property of the appellants. He also recommended a higher density residential classification than that proposed by the Planning Commission for the property then known as "Emerald Acres", which lies across Timonium Road from the Gill and Fowble tracts. (See *Fuller v. County Commissioners, supra.*)

On December 6, 1955, pursuant to notice duly published the County Commissioners held a public hearing for the announced purpose of hearing "objections and recommendations" with respect to the Zoning Commissioner's final report and proposed map. At that hearing the suggestion was made for the first time that the subject properties be classified for non-residential uses. Doctor Fowble, owner of the easternmost tract lying next to the Expressway (on a portion of which he had built a substantial residence in 1953) requested that his property be placed in an M. L. zone. It is not clear from the record as to exactly what classification his neighbor on the west, Mr. Gill, requested; but the trial court inferred from the fact that they were acting in concert that Gill sought a similar treatment for his property, and we understood at

the argument in this Court that this inference was correct. No evidence was offered at the hearing in support of these requests nor was any objection thereto expressed by any of those present. None of the appellants attended the hearing although they all had at least constructive notice that a hearing would be held on that date. Immediately thereafter, however, some of the appellants filed a protest against any change in classification of the Fowble and Gill properties from that previously proposed and requested an additional hearing by the County Commissioners on the matter. This request was not granted. Instead, a meeting was held between the County Commissioners and the Zoning Commissioner during which all requests which had been made at the public hearing were further discussed. Thereafter, on December 20, 1955, the County Commissioners approved a new zoning map for a portion of the Eighth Election District of Baltimore County under which the properties owned by Fowble and Gill were carved out of the otherwise exclusively residential area west of the Expressway and classified Business, Local (B.L.). Whether any other changes were made by the County Commissioners as a result of the December, 1955, hearing is not clear and cannot be determined from the map. It seems that if any others were made, they were of a minor character. No others were shown to have been so made in the immediate area here involved.

The appellants attack the action of the County Commissioners on two grounds: (1) that the notice given of the hearing before the Commissioners was not sufficiently worded so as to apprise the public fairly that substantial changes might be made in the zoning map and that a further hearing should have been held on the Fowble and Gill requests; and (2) that the "last minute" change in zoning of the subject properties from residential to Business, Local was arbitrary, capricious, discriminatory, and illegal.

With regard to the questions of the sufficiency of the notice and of one hearing only by the County Commissioners, we note at the outset that comprehensive zoning or rezoning requires approval of the County Commissioners (now approval of the County Council which has succeeded to the legislative

powers of the Commissioners). *County Council of Baltimore County v. Egerton Realty, Inc.,* 217 Md. 234, 140 A. 2d 510; *Baltimore County v. Missouri Realty, Inc.,* 219 Md. 155, 148 A. 2d 424; Charter of Baltimore County, Sec. 306.

Under Section 366 (c) of the 1948 Edition of the Baltimore County Code (Sec. 532 (c) of the 1955 Edition), the County Commissioners are empowered "from time to time, upon recommendation by the Zoning Commissioner, to amend, supplement or repeal the regulations or restrictions adopted by them, provided that the Zoning Commissioner shall hold a public hearing or hearings on any proposed change, and the County Commissioners shall follow the same procedure with respect to notice and public hearings as provided for the original regulations and restrictions * * *." Then follow provisions under which the County Commissioners can delegate to the Zoning Commissioner the power to amend or change the boundaries of zoning districts after a public hearing or hearings, but no amendment or change made by the Zoning Commissioner is to be effective until approved by the County Commissioners.

The pertinent provisions of Section 366 (c) relating to notice and hearing by the County Commissioners, governing original zoning and made applicable to rezoning, are as follows: "After the County Commissioners have received the final report [of the Zoning Commissioner], they shall hold a public hearing or hearings thereon, giving at least fifteen days' notice in a newspaper of general circulation throughout Baltimore County, of the place and time of the beginning of such hearing or hearings."

The published notice of the hearing stated that the Zoning Commissioner had prepared and submitted to the County Commissioners a Final Report with respect to proposed amendments, supplements and changes in the boundaries of the zoning districts within a portion of the Eighth Election District and that the County Commissioners would hold a public hearing on said Final Report at a specified time and place, at which time and place the County Commissioners would "hear objections and recommendations with respect to said Final Report." The notice also stated that the "Final

Report consisting of a comprehensive zoning map setting forth in color the proposed amendments, supplements and changes" was on file and open to public inspection at the office of the County Commissioners during specified hours; and the notice described the area covered by the Final Report.

We do not think the statutory language could be construed as requiring the County Commissioners to state in advance (what they could hardly know) the exact nature of any action which they might take with regard to matters brought to their attention at the contemplated hearing. Indeed, it is difficult to see how (without either prejudgment or prophecy) the notice here given could have been much more explicit or informative than it was. The appellants certainly had no right to assume that the legislative body entrusted with the sole power to enact a comprehensive zoning or rezoning ordinance in Baltimore County was bound to adopt the proposals or recommendations submitted by the Zoning Commissioner. *County Council of Baltimore County v. Egerton Realty, Inc., supra; Baltimore County v. Missouri Realty, Inc., supra; Vestry of St. Mark's v. Doub,* 219 Md. 387, 149 A. 2d 779.

The appellants contend, however, that the use of the disjunctive "hearing or hearings" in the statute was intended to require additional hearings with respect to any "substantial changes" or "important alterations" made by the County Commissioners. No such language is used in Section 366 (c), and we find no basis for reading it into the statute. The choice as to whether to have one hearing or more than one hearing seems to be left to the County Commissioners. A like contention to that here made by the appellants was rejected in *Vestry of St. Mark's v. Doub, supra,* and we reach a like decision. As to the absence of a requirement for a legislative hearing (other than such as may be prescribed) see *County Council of Baltimore County v. Egerton Realty, Inc., supra; M. & C. C. of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804. Cf. *Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346 (not a zoning case; legislative action by commissioners of a town).

The principal question is whether or not the legislative action of the County Commissioners in zoning or rezoning the

Fowble and Gill properties as Business, Local, was arbitrary, capricious, discriminatory or illegal.

Whether the adoption of a new land use map for a large portion of the Eighth Election District constituted original zoning or rezoning, the burden rests upon those attacking the classification of these properties as Business, Local, to show that the action under attack is arbitrary, capricious, discriminatory or illegal. The burden of overcoming the presumption of validity is a heavy one—heavier in the case of original zoning than in the case of rezoning. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 437, 121 A. 2d 249 (change in classification approved by Board of Zoning Appeals); *Walker v. Talbot County,* 208 Md. 72, 93, 116 A. 2d 393 (original zoning by County Commissioners); *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727 (rezoning by County Commissioners); *Zang & Sons, Builders, Inc. v. Taylor,* 203 Md. 628, 102 A. 2d 723 (rezoning by County Commissioners); *Fuller v. County Commissioners, supra* (adoption by County Commissioners of the same land use map here involved).

In *Huff v. Board of Zoning Appeals, supra,* 214 Md. at p. 52, we said that "[t]he County Commissioners determined in 1954 to rezone the whole of Baltimore County." In *Fuller v. County Commissioners, supra,* we did not draw a distinction between zoning and rezoning. In the present case, although the action of the County Commissioners would appear to be (as stated in the *Huff* case) rezoning, rather than zoning, we think that the same result would be reached in either aspect of the case.

This Court has had occasion in a number of cases to consider the validity of a zoning classification of a relatively small tract which differs from that of a much larger tract of adjacent land. The problem is commonly discussed as one of "spot zoning". That term has probably acquired some popular connotation of invalidity. If, however, the term is used in a descriptive sense, "spot zoning" may be valid or invalid, depending upon the circumstances of each particular case. *Huff v. Board of Zoning Appeals, supra; Baylis v. City of Baltimore,* 219 Md. 164, 148 A. 2d 429. As we said

in the *Huff* case: "When a zoning ordinance or an amendment puts a small area in a zone different from that of the surrounding area, we have what may be called 'spot zoning', using the term in a descriptive sense. Such zoning may be invalid or valid. If it is an arbitrary and unreasonable devotion of the small area to a use inconsistent with the uses to which the rest of the district is restricted and made for the sole benefit of the private interests of the owner, it is invalid. *Cassel v. City of Baltimore,* 195 Md. 348, 355. On the other hand, if the zoning of the small parcel is in accord and in harmony with the comprehensive zoning plan and is done for the public good—that is, to serve one or more of the purposes of the enabling statute, and so bears a substantial relationship to the public health, safety, morals and general welfare, it is valid. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 561; *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 495; *Ellicott v. City of Baltimore,* 180 Md. 176, 183; *Cassel v. City of Baltimore, supra.* The text writers and the Courts of many jurisdictions state the rule as the Maryland cases have stated it."

The Baltimore County Enabling Act (by Section 366 (a) of the Code of 1948, Section 532 (a) of the Code of 1955) requires that zoning regulations shall be made "in accordance with a comprehensive plan." A plan contemplates something more than a detailed zoning map, though such a map, at least ideally, should be in accordance with a comprehensive plan. See Haar, "In Accordance with a Comprehensive Plan", 68 Harvard L. Rev. 1154, at 1155-1158, 1172-1175.

This Court has consistently rejected spot zoning in its opprobrious sense. It has repeatedly referred to the statutory requirement, which is substantially the same under the general Enabling Act as under the Public Local Laws of Baltimore County, that zoning shall be in accordance with a comprehensive plan. In *City of Baltimore v. Byrd,* 191 Md. 632, 62 A. 2d 588, this Court, in the majority opinion by Chief Judge Marbury, said: "Zoning is an exercise of the police power which, for the public good, takes away some of the rights of individuals to use their property as they please, and at the same time gives them rights to restrict injurious

uses of the property of others. This cannot be done by piece-meal legislation. It can only be upheld as part of a general plan for a community which sets apart certain areas for resi-dence purposes, and permits commercial business in other areas where it is established or where such use is obviously suitable. Such a plan must be attuned to the public health, welfare and safety. It must not be arbitrary nor can it be discriminating, except insofar as is necessary for the proper establishment of the various kinds of districts permitted."

Later in the same case, after referring to the statutory re-quirement of Section 3 of Article 66 B of the Code (1939) that zoning regulations shall be made in accordance with a comprehensive plan, the Court referred to *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613, as giving a strict construction to provisions for non-conforming uses. The Court said (191 Md. 638): "This conclusion is based upon the same gen-eral conclusion that has been present in all of the zoning cases decided by this Court, that is that when the legislative body of a municipality adopts a comprehensive zoning plan, excep-tions should be allowed only in such cases as are clearly ex-ceptions in fact to the purposes of the ordinance, and without which there would be imposed a burden upon the owner of the property not justified by consideration of the public health, safety or welfare."

In the *Byrd* case, the Court also quoted the following from *Benner v. Tribbitt,* 190 Md. 6, 20, 57 A. 2d 346, 353: "There is no magic in the word 'zoning', but there is a wide differ-ence between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restric-tions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies." See also, *Cassel v. City of Baltimore,* 195 Md. 348, 73 A. 2d 486, and *Tem-mink v. Board of Zoning Appeals for Baltimore County,* 205 Md. 489, 109 A. 2d 85.

In *Huff v. Board of Zoning Appeals, supra,* we said: "A comprehensive plan has been said to be a general plan to con-trol and direct the use of land and buildings by dividing the

governmental area into use districts according to present and planned future conditions, so as to accomplish, as far as possible, the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of the individual property owners." The area covered by the map here involved was a large enough unit to satisfy the geographical requirement of a comprehensive plan. *Anne Arundel County v. Ward,* 186 Md. 330, 46 A. 2d 684.

In the *Cassel* case above cited, it was said (195 Md. 355): "It is * * * universally held that a 'spot zoning' ordinance, which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain."

The facts in the present case show that the Baltimore-Harrisburg Expressway now forms a substantial physical barrier between the property lying to the east of it and that lying to the west at and in the neighborhood of its intersection with Timonium Road. It would be difficult, to say the least, to think of a more logical line of demarcation between the industrial and commercial zones to the east and the residential zone to the west of this barrier. We think it patent that any commercial use of land west of the Expressway in this vicinity would involve a departure from a comprehensive plan, and there is nothing in the evidence which would bring such a use of the tracts in question within the exceptions to "spot zoning" recognized in the *Cassel* and *Temmink* cases, such as the creation of small districts within a residential zone for the operation of such establishments as grocery stores, drug stores, barber shops, and even gasoline stations, for the accommodation and convenience of the residents of the residential zone. Cf. *Ellicott v. City of Baltimore,* 180 Md. 176, 23 A. 2d 649.

Because of the absence of any record of proceedings before the County Commissioners and because no copy of Dr. Fowble's letter which he read at the hearing has been offered in evidence, we have nothing in the record to show the basis

upon which the County Commissioners acted in changing the classification of the Fowble and Gill properties, but it was stated at the argument that the owners' requests were based upon the same reasons as those developed in the testimony in this case.

The mere fact that it would be more profitable to the owners of the Fowble and Gill properties to have them classified for commercial use rather than residential, is not enough to require such classification. *Walker v. Talbot County, supra; Marino v. City of Baltimore,* 215 Md. 206, 137 A. 2d 198. It is not contended that these properties are not usable for residential purposes. Indeed, Mr. Gill has moved another house onto his land for residential use.

The appellees rely principally upon the testimony of Mr. Augustine J. Muller, who was a member of the Board of County Commissioners which changed the classification of the Fowble and Gill properties to B. L. and who had been a member of the Planning Commission (representing the County Commissioners) which had recommended that these properties be classified as residential. He had previously been the Zoning Commissioner of Baltimore County and he was and is a consulting engineer. He was also personally familiar with the properties in question and lived not far from them. He was permitted, over objection, to testify as an expert, not as a legislator explaining his action as such. We think there was no error in admitting his testimony, though we do not find it persuasive.

The principal point which he sought to develop—and it was rather weakly supported by Mr. Adams, the present Zoning Commissioner of Baltimore County, on cross-examination—was that the proximity of the Expressway would create a demand for services to transients at the Timonium Road interchange, and that the Fowble-Gill properties were well located to supply such services.

Mr. Muller brushed off the traffic difficulties which would be created with the opinion that they would not be serious and could be controlled by the installation of an access road and a traffic light. If it were necessary to go fully into the problem of traffic congestion, there might be a serious ques-

tion as to whether the requirements of Section 532 (a) of the 1955 Code of Baltimore County (Section 366 (a) of the 1948 Edition) relating to the reduction of "congestion in the roads, streets and alleys" has been complied with, since the entrance to the Fowble-Gill properties would be across Timonium Road opposite the ramps leading to and from the southbound lane of the Expressway, just west of the underpass and its large columns supporting the Expressway bridge. See *Hardesty v. Board of Zoning Appeals*, 211 Md. 172, 126 A. 2d 621; *Temmink v. Board of Zoning Appeals*, 212 Md. 6, 128 A. 2d 256; and *Price v. Cohen*, 213 Md. 457, 132 A. 2d 125. Cf. *Missouri Realty, Inc. v. Ramer*, 216 Md. 442, 140 A. 2d 655, and *Vestry of St. Mark's v. Doub, supra*.

When we examine the facts of this particular case, even if we assume that the Expressway will generate a need for tourist services near to it, the problem still remains of determining whether the legislative determination of the County Commissioners that a Business, Local area should be established on the nineteen acres here involved is supportable on the basis that such a conclusion was (even if not supported by the weight of the evidence) at least fairly debatable. See *Temmink v. Board of Zoning Appeals, supra; Hardesty v. Board of Zoning Appeals, supra.*

The only evidence tending to show that the subject properties would be a logical place at which to satisfy commercial needs generated by the Expressway is the bare fact that they are located at what is presently the closest interchange to Baltimore. On the other hand, and even apart from questions of traffic hazards and congestion which might be involved at the Fowble-Gill properties, we think that the evidence shows that there is an ample area east of the Expressway and close to it, which is so zoned as to be able to satisfy any probable needs of transients. The Business, Local zoning of the tracts in question would by no means limit their use to meeting the needs of tourists, such as for a gasoline station or a motel. Numerous other uses would also be permitted which have no apparent relevance to tourist travel. We also observe that, despite Mr. Muller's personal knowledge of the properties in question and his knowledge of zoning and despite the fact

that he lived near the properties here in question, the possible need of services for transients at this intersection does not appear to have occurred to him when he was considering the proposed new land use map of the district as a member of the Planning Commission. Likewise, we note that at the hearing before the County Commissioners, the classification which Dr. Fowble and Mr. Gill sought was not Business, Local, but Manufacturing, Light—a classification which seems to bear little relation to tourist trade.

No reason for making an exception to the residential zoning of the property west of the Expressway other than meeting the needs of transients was strongly, or indeed seriously, urged in support of the changes made by the County Commissioners.

The suggestion that the B.L. zoning of the Fowble-Gill properties would increase the value of these properties and would thus benefit the community through increased assessments and increased taxes hardly merits discussion. It is at best speculative and it ignores the depressing effect upon the value of nearby properties which this classification of the Fowble-Gill properties would probably have.

The County Commissioners were here exercising a legislative power delegated to them by the General Assembly. Such a power can be validly exercised only subject to the terms upon which it is delegated. One of the terms here applicable is that zoning shall be "in accordance with a comprehensive plan." A departure from a comprehensive plan may involve both exceeding the power which has been delegated and discrimination which is violative of constitutional requirements. See *Huff v. Board of Zoning Appeals, supra,* 214 Md. at 56-57, and Haar, *op. cit.,* 68 Harvard L. Rev. at 1170-1173, where he notes the tendency of some cases to treat "comprehensive" as meaning "well considered" and then to equate comprehensive plan requirements with constitutional requirements. Both the constitutional and the statutory aspects of "spot zoning" are recognized in *Cassel v. City of Baltimore, supra,* 195 Md. at p. 355. Both, we think, are involved in the present case; but we consider it unnecessary to go beyond the statutory question in this case.

Here we think that the action of the County Commissioners in classifying the Fowble and Gill properties falls within the description of invalid "spot zoning" given in the *Cassel* case, and largely restated in the *Huff* case, as an arbitrary and unreasonable devotion of a small area to a use inconsistent with the uses to which the rest of the district is restricted, made for the sole benefit of the private interests of the owner and not in accordance with a comprehensive plan. In the instant case the classification of the properties in question made by the County Commissioners seems irreconcilable with the meaning of "a comprehensive plan," as determined in the *Huff* case.

Accordingly, the decree of the Circuit Court dismissing the appellants' bill will be reversed and the case remanded for further proceedings not inconsistent with this opinion. The precise form of relief which might be granted against the County Commissioners or their successors, the County Council, was not passed upon by the trial court and was not fully argued here. In accordance with *Hedin v. Board of County Commissioners*, 209 Md. 224, 236-237, 120 A. 2d 663, we shall not pass upon that question at this time.

> *Decree reversed and case remanded for further proceedings not inconsistent with this opinion; the costs to be paid by the appellees.*