## MAYOR AND ALDERMEN OF CITY OF
## ANNAPOLIS *v.* KRAMER

[No. 356, September Term, 1963.]

*Decided June 9, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Malcolm B. Smith,* with whom was *Louis M. Strauss* on the brief, for appellant.

*C. Edward Hartman, II,* with whom were *Fell & Hartman* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The trial court reversed the action of the Mayor and Aldermen of the City of Annapolis in denying the application of the appellee for the rezoning of some six acres of land from residential to commercial, and the City of Annapolis appealed.

The land in question is part of a tract of about seventeen acres which was partly within the corporate limits of Annapolis and partly subject to the jurisdiction of Anne Arundel County, when the appellee and her late husband acquired it in

1951 as tenants by the entireties. The land runs for some three thousand feet along the south side of Edgewood Road east of Bay Ridge Road (into which Edgewood Road dead-ends), with an average depth of two hundred fifty feet.

In 1952 the seventeen acres became subject to four zoning classifications. Under County zoning it was heavy commercial for one hundred fifty feet east of Bay Ridge Road, and for the next approximately one thousand fifty feet (with the exception of a small wedge of land in the City of Annapolis which was zoned for a community shopping center) was agricultural. The remaining eighteen hundred feet were within the limits of Annapolis and were zoned residential C, a classification intended primarily for single or multiple housing not in excess of eight dwelling units per acre.

The Mayor and Aldermen of Annapolis decided to straighten its boundary line by annexing the subject land by means of the amendment of its charter in the exercise of the power granted municipal corporations by Sec. 4 of Art. XI-E of the Constitution of Maryland and Code (1957), Art. 23A, Secs. 11 through 19. On December 10, 1956, a resolution was adopted, pursuant to the direction and requirements of Sec. 13 of Art. 23A, to become finally effective January 30, 1957, which, according to the stipulation of the parties, "changed the boundary line between the City of Annapolis and Anne Arundel County to conform to the southern boundary of plaintiff's [appellee's] property thereby incorporating all of plaintiff's property into the city." The stipulation also recites that in Sec. 2 of the resolution there was language which states "that plaintiff's [appellee's] property to a depth of 150 feet from Bay Ridge Road shall be zoned as commercial and the balance as residential C."

Sec. 19 (p) of Art. 23A (in effect in 1956), dealing with annexation of contiguous lands by a municipal corporation, provides that the powers given to municipal corporations "by Art. 11E of the Constitution, by this article, and by Article 66B (of the Code)," shall not be deemed to authorize any municipal corporation to exercise planning and zoning jurisdiction or power within any political subdivision in which any such jurisdiction or power is exercised by any state, regional or county

agency or authority. The section makes an exception, however, as follows: "Except that where any area is annexed to a municipality authorized to have and having then a planning and zoning authority, the said municipality shall have exclusive jurisdiction over planning and zoning within the area annexed * * *."

Sec. 19 (d) of Art. 23A requires publication of a "public notice" of the annexing resolution for not less than four weeks in a newspaper of general circulation "briefly and accurately describing the proposed change and the conditions and circumstances applicable thereto." It then provides that the "public notice" shall specify "a time and place at which a public hearing will be held by the legislative body on the resolution." Subsection (e) which follows provides that following the public hearing the public body may enact the annexing resolution which shall not become effective until at least forty-five days after final enactment.

Code (1957), Art. 66B, Secs. 4 and 6 (which relate to incorporated towns containing more than 10,000 inhabitants) and Secs. 21 (d) and 21 (f) (which relate generally to counties, towns, villages and other incorporated political subdivisions) provide, respectively, (1) for public hearings after fifteen days' notice as a prerequisite to the exercise of original zoning (Secs. 4 and 21 (d)), and (2) that the planning authority involved shall make recommendations for the boundaries of the original zoning districts after holding a public hearing, and that the legislative body shall not hold its final hearing or take action until it has received the final recommendation of the planning group (Secs. 6 and 21 (f)). These provisions must be complied with. *Walker v. Talbot County,* 208 Md. 72. *Cf. Mayor and Council v. Cotler,* 230 Md. 335.

It would appear that the provisions on the same subject matter of Articles 23A and 66B of the Code must be read together and be applied when a municipality zones for the first time in the course of annexing land. In the case before us the record leaves it uncertain whether the City Planning and Zoning Commission of Annapolis held a public hearing in the course of deciding the proper zoning of the appellee's land or whether it

made a recommendation to the Mayor and Aldermen as to the proper zoning. It is silent also on whether the Mayor and Aldermen held a public hearing on its resolution of annexation which included a zoning of the annexed lands.

We shall assume that the City did its statutory duty and took all the steps made necessary for valid annexation and zoning by Art. XI-E of the Constitution and the provisions of Articles 23A and 66B of the Code, since the contrary does not appear, and the appellee makes no point or contention that the City did not effectively annex and zone her land.

The appellee relied on original error and change in conditions in seeking a change from residential to commercial classification. She produced before the Mayor and Aldermen a real estate expert who felt there had been both and who pointed out that Bay Ridge Road is zoned (by the County) commercial on both sides for a depth of one hundred feet and that there are several unattractive commercial establishments along that road near Edgewood Road, that opposite the portion of the appellee's land which she now seeks to have rezoned the land is zoned for a shopping center and that Edgewood Road carries heavy traffic, particularly in summer when two beaches to which it leads are in busy operation, and that the road might soon be widened to eighty feet. His view was that the best use of the land would be for light commercial but that if it were not rezoned "the property would probably be used for residential use," although he felt it would be only the lowest type of residential use. He later said it would be financially unfeasible to develop the property for residential use although he gave no specifics.

The City Planning and Zoning Commission of Annapolis unanimously recommended to the Mayor and Aldermen that the rezoning be denied because in its opinion there was no mistake in the original zoning, residential uses are not unfeasible and the change sought would be spot zoning, not in the public interest. The protesting neighbors, mostly from Annapolis Roads, a high grade residential development which is immediately to the south of appellee's land, pointed out that all the area to the south was residential, as was the area to the east of the shopping center north of Edgewood Road. One of the

neighbors, a "Programmer" for the State Planning Department, testified the change to commercial would be invalid spot zoning for the reason that the area of the rezoned tract would be too small to attract or support such uses and the land would, in all probability, soon work out for attractive residential use.

The Planning Director of Annapolis testified in support of the Planning Commission's findings and recommendations.

We think the applicant for rezoning did not show that she would be deprived of all reasonable use of her land if its classification was not changed from residential. It was not shown, for example, that the land could not be developed by screening off Edgewood Road and using streets running south from it or by running a road through the middle or by utilizing the southernmost boundary for a roadway. There was evidence it could be used for residential purposes. Cf. *Pem Co. v. Baltimore City,* 233 Md. 372; *Marino v. City of Baltimore,* 215 Md. 206.

The Planning Commission's views as to no original error or change since original zoning and the Mayor and Aldermen's action were supported by the fact that a road ran as a barrier between the limited commercial zoning to the north and the residential to the south, and the fact that most of the applicant's land was contiguous to or across the road from other residential land, most of it developed in that fashion. We feel that the Mayor and Aldermen reasoningly and reasonably could have reached a decision either way and, this being so, the matter before them was fairly debatable, within the meaning of our prior cases, and the decision they chose is not to be disturbed by the courts. *Furnace Branch Co. v. Board,* 232 Md. 536; *Elliott v. Joyce,* 233 Md. 76; *Montgomery County v. Ertter,* 233 Md. 414.

*Order reversed, with costs.*