BESHORE, ET AL. *v.* TOWN OF BEL AIR, ET AL.

[No. 114, September Term, 1964.]

400

*Decided February 4, 1965.*

*Motion for rehearing filed March 1, 1965, denied March 2, 1965.*

The cause was argued before HAMMOND, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Michael P. Crocker,* with whom were *Morton P. Fisher, Jr.* and *Piper & Marbury* on the brief, for appellants.

*Albert P. Close* and *William H. Gorman, II,* for appellees.

SYBERT, J., delivered the opinion of the Court.

In this suit the appellants, who are citizens and taxpayers of Harford County and of Bel Air, its county seat, challenged the validity of two ordinances adopted by the Town Commissioners of Bel Air—Resolution No. 20, which annexed and zoned four properties adjacent to the perimeter of the town, and Ordinance No. 157, passed earlier, which amended the town's zoning ordinance so as to permit the fixing of zoning classifications for newly annexed property in the annexation proceedings. The appellees, who were defendants below, are the Town of Bel Air, its five Town Commissioners, and its Superintendent of Public Works. After a hearing, Judge Dyer in the Circuit Court for Harford County passed a decree upholding the validity of the two legislative enactments and denying an injunction to prohibit the issuance of building permits for the annexed property. The complainants then appealed.

The four tracts annexed to the town by Ordinance No. 20 are contiguous and aggregate nearly 68 acres. They front on the east side of U.S. Route No. 1, on the south edge of Bel Air. The

largest, known as the Durham-Julio tract, consists of 44.76 acres, unimproved, zoned in the county as B-3 (General Business District), except for a small portion zoned A-1 (Agricultural District). The next largest tract, known as the Pons-Kunkel property, also unimproved, contains 20.35 acres and was zoned in the county as R-2 (Urban Residence District, permitting single family dwellings). The two remaining parcels, one containing 1.48 acres owned by one Tucker, and the other containing 1.33 acres owned by one Smith, are improved business properties and each was zoned in the county as B-3 (General Business District).

Ordinance No. 157 and Resolution No. 20 were adopted by the Town Commissioners after the owners of the Durham-Julio tract, which was then outside the Bel Air town limits, failed early in 1961 to obtain from Harford County a permit for the construction of a shopping center. Their application, which was awaiting a public hearing before the County Commissioners after it had been approved by the Harford County Planning and Zoning Commission, was "checkmated" by a decision of the Circuit Court for Harford County in an unrelated case involving a property known as the "Worthington Farm", several blocks distant from the Durham-Julio tract but also adjacent to and outside the town limits. The court held that no shopping center could be erected in the county near Bel Air, but only "at or near" one of the six areas designated for business service centers on the Harford County Land Use (or Master) Plan adopted by the County Commissioners in 1957. The nearest of such areas is approximately three miles distant from Bel Air. After the court's decision, no further steps were taken on the Julio's application to the county.

The Durham-Julio tract was part of a farm owned by W. Edgar Durham, who had contracted to sell the 44.76 acres in question to Grove Point, Inc., a family corporation owned by three real estate developers named Julio. Before the circuit court ruling just mentioned, the Julios had approached the Bel Air Town Commissioners relative to the furnishing of sewer service to the proposed shopping center, since no such county service was available. The Town Commissioners, following their established policy, had replied that the shopping center could

be connected with the town sewer system if the property were annexed to the town and arrangements were made for a suitable division of the costs.

Several days after the circuit court decision in the Worthington case, the Town Commissioners of Bel Air, a representative of Whitman, Requardt and Associates, the town's consulting engineers, and officials of the State and County Health Departments held a meeting on April 6, 1961, at which it was reported that the Town had several requests for the sewering of properties outside the corporate limits, and expected more, and that the town's boundaries would expand. It was suggested that the Worthington and Durham properties could be sewered without overloading the town's facilities.

In view of the fact that all previous annexations to the town had involved areas zoned non-commercial in the county (as pointed out by the appellees in their brief and argument), and of the further fact that some of the properties now considered for possible annexation held commercial classifications in the county, the Town Planning Commission at a meeting held on May 3, 1961, decided that sec. 4.6 of the Town Zoning Ordinance (No. 149), which provided that annexed territory should automatically be classified as R-1 (permitting single-family residences) until otherwise classified, should be revised and that independent legal opinion be sought to determine how this could be accomplished. At a special meeting of the Planning Commission held on May 10, 1961, a legal opinion of a Baltimore law firm was submitted which suggested that sec. 4.6 be amended to read as follows:

"4.6 In all cases where territory has not been specifically included within a district, such territory shall automatically be classified as R-1 District until otherwise classified, but in cases of annexation of territory where the annexation proceeding provides a zoning classification for the territory to be annexed, such territory shall be so classified upon incorporation into the Town of Bel Air."

Adoption of the amendment in the language of the legal opinion was recommended to the Town Commissioners who, at a

meeting on the same day, discussed and approved the recommendation as submitted. After two notices by publication, a public hearing was held on June 14, 1961, and on August 14, 1961, the Town Commissioners adopted Ordinance No. 157, embodying the amendment. Apparently all requirements of Article 17 of the town's Zoning Ordinance (relating to amendments) and of Code (1957), Art. 66B (Zoning and Planning), were complied with in adopting the amendment. On August 14 the Town Commissioners requested the Planning Commission to study adjoining areas and to make recommendations as to the proper zoning thereof, "with particular reference to the Worthington and Durham properties".

On August 17, 1961, W. Edgar Durham filed a petition with the town of Bel Air requesting the annexation of the 44.76 acre Durham-Julio tract. The petition was referred to the Planning Commission for its recommendations as to zoning in conjunction with the proposed annexation. The Commission held a public hearing on the recommendation of its planning consultant, Julian Tarrant, that the property be zoned B-3 (General Business), except for a small strip suggested for a residential classification, and then recommended to the Town Commissioners that, if annexed, the Durham-Julio property be zoned as suggested by Mr. Tarrant. The Town Commissioners introduced a resolution for the annexation of the tract, including the zoning as recommended, and published a notice of a public hearing for December 4, 1961. Before that date, the public hearing and the annexation proceeding were cancelled because of (according to the appellants) certain procedural imperfections.

Then the owners of the Durham-Julio, Pons-Kunkel, Tucker and Smith properties filed with the Town Commissioners a joint petition, dated January 13, 1962, requesting that their properties be annexed by the town and that they retain the zoning classifications which they had in Harford County or be assigned similar zoning classifications under the town's Zoning Ordinance. The Town Commissioners requested the Bel Air Planning Commission to study the petition and make recommendations in regard to zoning classifications. In turn, the Planning Commission directed Mr. Tarrant, the planning consultant, to recommend zoning classifications for the area to be

annexed. Mr. Tarrant later recommended that upon annexation the Durham-Julio tract should be classified as B-3 (General Business) except for a small portion which he suggested for R-1 (Single-Family Residence). As mentioned earlier, these two parts of the Durham-Julio property were zoned B-3 (General Business) and A-1 (Agricultural) in Harford County. Tarrant recommended that the Pons-Kunkel property be classified R-1 (Single-Family Residence). In the county this property was zoned R-2 (which permitted single-family dwellings). As to the Tucker and Smith properties he recommended that they be zoned B-3, the same classification as they had in the County.

The Town Planning Commission on February 21, 1962, approved the new zoning classifications as suggested by Tarrant and, after the publication of notices on March 1 and 8, a public hearing on zoning was held by the Planning Commission on March 14, 1962. At the hearing counsel for the owners of the Pons-Kunkel property stated that the owners desired their property to be classified as R-2 (General Residence) upon annexation rather than R-1 as advertised in the notices of the hearing. On March 20 the Planning Commission recommended to the Town Commissioners that the zoning classifications for the properties to be annexed be as Tarrant recommended except that the Pons-Kunkel property should be zoned R-2 rather than R-1. On June 18 a charter amendment, Resolution No. 20, providing for the annexation and zoning of the land in question (with the classifications recommended by the Planning Commission) was introduced at a meeting of the Town Commissioners. After the publication of four weekly notices, a public hearing was held on July 31, 1962, and on August 20, Resolution No. 20 was adopted by the Town Commissioners.

On November 3, 1962, the appellants filed a bill of complaint in the Circuit Court for Harford County seeking a declaratory judgment. However, on March 22, 1963, an amended bill based on the general equity jurisdiction of the circuit court was filed praying that Ordinance No. 157 and Resolution No. 20 be declared invalid, that the Town, the Town Commissioners and the town's Superintendent of Public Works be enjoined from

issuing permits to any person for the erection of a shopping center on the Durham-Julio tract, and for general relief. On January 31, 1964, the circuit court decreed, after a trial on the merits, that the Ordinance and the Resolution were valid and denied the relief prayed.

I

The appellants' first contention is that "as a matter of public policy" Ordinance No. 157, permitting annexation and zoning to be effected in one proceeding, is void because of the participation of a person in its passage who had a conflicting private pecuniary interest. The person referred to is Adolph A. Pons, Jr., who at the time of the enactment of Ordinance No. 157 was one of the Town Commissioners of Bel Air and the Commissioners' representative as a member of the town's Planning Commission. At the time in question, Pons' wife and two of her relatives were the owners of the 20.35 acre tract referred to as the Pons-Kunkel property. Pons participated in deliberations and votes of the two town bodies leading to the adoption of the ordinance.

In an effort to show that Pons had a private pecuniary interest in the passage of Ordinance No. 157, the appellants assert that at least since 1960 the owners of the unimproved Pons-Kunkel property desired to build apartments thereon but were prevented by two obstacles—the use was not permitted under the property's zoning classification in the county, and the tract lacked sewer service, which would be available only if it were annexed to Bel Air. They claim that the amendment of sec. 4.6 of the town's Zoning Ordinance was the first step in a scheme on Pons' part to bring his wife's property into the town with a zoning classification permitting apartments and to induce the Julios to consent to annexation of their larger tract with the same business classification it bore in the county, thereby rendering the extension of the town's sewer system to both properties economically feasible.

The difficulty with the appellants' argument is that it is not supported by the evidence. A diligent search of the record has failed to reveal any clear evidence that the owners of the Pons-Kunkel tract desired or intended, at the time of the adoption of Ordinance No. 157, to build apartments on their property.

When the ordinance was adopted on August 14, 1961, no petition for annexation had been presented to the Town Commissioners, and there is nothing in the record to show that Pons had ever had any contact with the Julios before the ordinance was passed. We think it is significant that when the original petition for annexation of the Durham-Julio tract was filed on August 17, 1961, the owners of the Pons-Kunkel property did not join in. The first mention to any official agency of possible annexation of the latter parcel appears to have been made orally at a Planning Commission meeting on September 6, 1961, as is indicated in a subsequent letter from Mr. Tarrant to the chairman of the commission. This date was more than three weeks after the passage of Ordinance No. 157.

While Pons participated in some or all of the action in the original Durham-Julio application, the proceedings proved abortive and were cancelled in December, 1961. We think the inference is permissible from the evidence that the Pons-Kunkel interests did not positively decide to request annexation until the joint petition was filed by the owners of the four properties on January 13, 1962. It was conceded that Pons did not attend meetings of either the Planning Commission or the Town Commissioners at which this petition was discussed or voted upon. There is no intimation in the evidence that Pons influenced the proceedings or the result with respect either to Ordinance No. 157 or Resolution No. 20. Rather, the passage of the ordinance seems to have been dictated by the necessities of the situation then facing the town, and the form of the enactment was suggested by independent counsel. The evidence fails to bear out the Machiavellian role attributed to Pons by the appellants, and the cases which they cite are distinguishable on the facts.

While it is true that most, if not all, courts apply a strict rule in striking down enactments where one who participated is shown to have a conflicting interest, we said in the recent case of *Montgomery County v. Walker*, 228 Md. 574, 580, 180 A. 2d 865 (1962) : "Whether, in a particular case, a disqualifying interest exists, is a factual question and is governed by the circumstances of that case, and the enunciation of a definitive rule is not possible." On the record presented here, we cannot

hold Judge Dyer clearly wrong in finding no conflict of interest on the part of Pons when he participated in the passage of Ordinance No. 157, Maryland Rule 886 a, and thus the validity of the ordinance was properly sustained. For similar holdings in cases involving more or less comparable facts, see *Wilson v. Long Branch,* 142 A. 2d 837 (N. J. 1958); *Van Itallie v. Borough of Franklin Lakes,* 146 A. 2d 111 (N. J. 1958); *Benincasa v. Incorporated Vill. of Rockville Centre,* 215 N. Y. S. 2d 575 (1961); and see annotation, 133 A.L.R. 1257.

## II

The appellants next contend that Resolution No. 20, providing for both annexation and zoning of the four tracts mentioned, is invalid for four specific reasons. We shall discuss the issues in a sequence different from that appearing in the briefs. The appellants argue that "zoning changes and classifications for which there is a special statute [Code (1957), Art. 66B] are not intended to be included in an annexation resolution under the guise of the 'conditions and circumstances' provision of the annexation statute [Code (1957), Art. 23A, sec. 19(b)]."

Section 19(b) of the annexation law, *supra,* provides:

"* * * The resolution shall describe by a survey of courses and distances, and may also describe by landmarks and other well-known terms, the exact area proposed to be included in the change, and shall contain complete and detailed provisions as to the conditions and circumstances applicable to the change in boundaries and to the residents and property within the area to be annexed."

Resolution No. 20 in the case before us adequately describes the four tracts and provides for their annexation, and then fixes their zoning classifications (as hereinbefore mentioned) and makes other provisions expressly as "conditions and circumstances applicable to the change in said corporate boundaries and to the residents of property in the areas so annexed * * *". Thus we must determine whether the assignment of zoning classifications is a proper "condition" or "circumstance" of annexation so that it may be accomplished in the annexation resolution.

The appellants do not cite (nor have we found) a single case supporting their argument, but rather base their contention on a survey of the annexation statutes of most of the States. They point out that not one state annexation statute expressly provides for zoning as a proper condition and circumstance of annexation, even though many provide for a wide variety of other subjects which are proper conditions and circumstances. The only case raising the identical question was *Tanner v. City of Boulder,* 377 P. 2d 945 (Colo. 1962), but that case went off on a jurisdictional point and the issue presented here was not decided, as the appellants note in their brief.

We see no logical reason to hold that zoning is not a proper condition and circumstance of annexation. It does not seem to us that sec. 19(m) of Art. 23A, requiring the inclusion of certain provisions in an annexation resolution, and making permissive the inclusion of certain other provisions as to special treatment with respect to taxation and municipal services and facilities, was intended by the Legislature to limit the broad language of sec. 19(b) requiring the inclusion of "complete and detailed provisions as to the conditions and circumstances" which shall affect the "residents and property within the area to be annexed". Not being blessed with prescience as to all situations which might arise, the Legislature chose not to define the types of conditions and circumstances which might properly be cognizable in future annexation proceedings. The maxim *"expressio unius est exclusio alterius",* meaning that the expression of one thing implies the exclusion of another thing not mentioned (which is not a rule of law but merely an auxiliary rule of statutory construction), is not applicable to sec. 19(m) in view of the language of sec. 19(b), for the maxim should not be applied to override the manifest intention of the Legislature or a provision of the Constitution. *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55, 106 A. 2d 103 (1954).

A municipality having an authorized planning and zoning authority has exclusive jurisdiction to zone annexed property, Code (1957), Art. 23A, sec. 19(p). To require such a municipality to annex and then later zone, in separate proceedings, would appear to be illogical and wasteful when the re-

quirements of both Art. 23A and Art. 66B can be satisfied in one proceeding, as happened in the instant case. The realities of modern annexation are such that the owners of the properties to be annexed are vitally interested in the zoning classification which their properties will receive upon annexation. Delay in classifying could often result in considerable financial loss.

Although the precise question as to the propriety of combining annexation and zoning classification in one proceeding does not appear to have been decided in any reported case, we did have occasion to comment on the problem in the recent case of *City of Annapolis v. Kramer,* 235 Md. 231, 201 A. 2d 333 (1964). That case involved an application for rezoning some years after the subject property had been annexed and zoned by one resolution. While it was not necessary there to decide the question now before us, Judge Hammond, for the Court, reviewed certain provisions of Articles 23A and 66B and then stated (at p. 234 of 235 Md.) : "It would appear that the provisions on the same subject matter of Articles 23A and 66B of the Code must be read together and be applied when a municipality zones for the first time in the course of annexing land. * * *" In the case before us the requirements of both statutes were satisfied. In one other case, *Westwood Development Company v. City of Abilene,* 273 S. W. 2d 652 (Tex. Civ. App. 1954), annexation and zoning were carried out in the same proceeding, but the validity of so doing was not at issue.

Judge Dyer concluded that zoning is a condition applicable to property. We agree, and hold that the fixing of zoning classifications for newly annexed property is properly includable in a resolution providing for annexation by a municipality which has an authorized planning and zoning commission and where, as here, such municipality has otherwise complied with the requirements of Articles 23A and 66B of the Code.

The appellants next argue that Resolution No. 20 is invalid because it "violates the rules against enlarging by implication statutes in derogation of common law and requiring strict application of all delegated powers". They contend that since neither Art. 23A nor Art. 66B provides for the combining of annexation and zoning in one proceeding, Resolution No. 20 is void. We think otherwise. Basically, no enlargement of the

powers delegated by the two statutes is effected by exercising the powers together. Although it is true that neither statute specifically provides for such a combination, the manner in which we have interpreted Art. 23A, sec. 19(b), above in regard to "conditions and circumstances" makes the combination permissible.

It is further urged that Resolution No. 20 violates Art. III, sec. 29, of the Maryland Constitution, made applicable to municipal charter amendments by Code (1964 Supp.), Art. 23A, sec. 13(c), on the grounds that it embraces more than one subject (annexation and zoning) and its title does not mention zoning.

Maryland has given a liberal interpretation to the constitutional requirement. *Balto. Transit Co. v. M.T.A.*, 232 Md. 509, 194 A. 2d 643 (1963); Everstine, *Titles of Legislative Acts*, 9 Md. Law Rev. 197. In the *M.T.A.* case, the title of the Act creating the Metropolitan Transit Authority was challenged because the title did not refer to the seat-tax fee described in the Act. We rejected the contention, holding that the seat-tax fee was one of the means of effectuating the purpose of the Act and that it need not be mentioned in the title. To the same effect see *Allied American Co. v. Comm'r.*, 219 Md. 607, 150 A. 2d 421 (1959); *Leonardo v. County Comm.*, 214 Md. 287, 134 A. 2d 284 (1957).

In *Baltimore City v. Reitz,* 50 Md. 574 (1879), quoted with approval in *Hitchins v. Cumberland,* 177 Md. 72, 80, 8 A. 2d 626 (1939), the basic principle was stated (50 Md. at p. 579): "* * * If several sections of the law refer to and are *germane* to the same subject-matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. * * *" And, in reply to an argument that one section of the law was discordant and dissimilar to another, the Court further said (at p. 581): "* * * Had it been enacted as a separate law, its validity could not be denied. If the two sections are not so discordant, that they would be effective and valid as separate laws, why can they not be embraced in the same Act * * *".

Sutherland, in his treatise on statutory construction, states that: "Where numerous provisions are necessary to effectuate

the main purpose of legislation, it may not be urged against the statute's validity that other ends also are served, if all the provisions are germane to the general subject." 1 *Sutherland, Statutory Construction* (3rd ed.), sec. 1713. See, *idem,* secs. 1707, 1710, 1711 and 1712. See also *Rhyne, Municipal Law,* pp. 227-228.

As we have seen, the fixing of zoning classifications for newly annexed land is a proper condition and circumstance of annexation, and thus it is germane to the subject. This being so, its inclusion in Resolution No. 20, without specific reference to it in the title, was proper.

The appellants claim as their final reason for the invalidity of Resolution No. 20 that no proper public notice of the R-2 zoning classification of the Pons-Kunkel property was contained in the resolution. This contention is without merit. As noted above, the public notice of the hearing before the Town Planning Commission stated that the Pons-Kunkel tract would be zoned R-1, but at the public hearing the owners of the property requested the Planning Commission to recommend an R-2 classification to the Town Commissioners. The Planning Commission did recommend an R-2 classification and the Town Commissioners accepted the recommendation. In the notices of the public hearing before the Town Commissioners on Resolution No. 20 an R-2 classification of the Pons-Kunkel property was proposed upon annexation.

It was the function of the Planning Commission (and not of their consultant) to advise the Town Commissioners in regard to zoning. *St. Mark's, etc. Church v. Doub,* 219 Md. 387, 149 A. 2d 779 (1959) ; *Hewitt v. Baltimore County,* 220 Md. 48, 151 A. 2d 144 (1959). We stated in the *Doub* case that a zoning commissioner could properly change his recommendation, after public notice and a hearing, before the recommendation was made to the county commissioners, and that a further public notice and hearing were not required. In the case before us the Planning Commission did not "change" its recommendation after the public hearing, since it had not yet made a recommendation to the Town Commissioners. Since the Town Commissioners accepted the recommendation when made and their notices of the hearing before them did contain mention of

the R-2 classification proposed for the Pons-Kunkel property, the public was adequately notified as to the Commissioners' intention. Cf. *Bishop v. Bd. of Co. Commissioners,* 230 Md. 494, 187 A. 2d 851 (1963); *Cassidy v. Board of Appeals,* 218 Md. 418, 146 A. 2d 896 (1958).

### III

The next contention of the appellants is that comity and the Maryland planning statute prohibit evasion of the Harford County Master Plan as interpreted by the Circuit Court for Harford County in the Worthington case by the device of annexing the Durham-Julio property to Bel Air. They argue that Code (1957), Art. 66B, sec. 16, makes "it obligatory that towns and counties honor and respect the development and land use of their neighbors." Although we do not agree with the appellants' interpretation of sec. 16, since it relates only to the preparation of a master plan by a municipal planning commission, we do agree with the general proposition that a municipality when it zones its territory should take into consideration the character of the areas immediately surrounding its borders. However, the appellants would have this Court adopt a much more demanding rule. It is their contention that since the effect of the decision in the Worthington case was to prohibit the construction of a shopping center on the Durham-Julio tract while it remained in Harford County under the county's Master Plan, the town of Bel Air after annexation of the land could not allow such construction. This theory would require a municipality not only to take account of the character of the area surrounding its borders but would require a municipality to abide by a zoning ordinance (as judicially interpreted) of another jurisdiction. As we have seen, a municipality with an authorized planning commission has exclusive authority to zone newly annexed areas, but the theory of the appellants would render this authority nugatory in many cases. The short answer to appellants' contention is that the Harford County Master Plan does not "regulate" zoning within the town of Bel Air.

Considering the character of the area annexed, the Durham-Julio property and the two small properties annexed were zoned commercial in the county, and they were assigned this classification upon annexation. The question as to whether a shopping

center is a permitted use under the town's zoning classification must await the application for a permit to build such. At the time of the decision of the court below no such application had been made and the court rightfully declined to make a ruling prematurely. Therefore that question is not properly before this Court. We are simply holding that the mere existence of the Harford County Master Plan and the mere circumstance of its interpretation by the Circuit Court for Harford County does not prevent the town of Bel Air, after considering the character of the land surrounding its borders, from deciding that a shopping center is a proper use of the area annexed.

As to the cases relied on by the appellants, such as *Borough of Cresskill v. Borough of Dumont,* 104 A. 2d 441 (N. J. 1954), we do not read them as standing for the proposition advanced by the appellants. The *Cresskill* case involved four adjoining boroughs in a highly industrialized section of New Jersey where one built up area merged into another. The Court gave some indication that its decision might have been different in a case "where there are large undeveloped areas at the borders of two contiguous towns." (p. 445).

As the situation stands today, we do not think the zoning of the Durham-Julio tract as B-3 by the town was unreasonable considering the character of the land adjoining it in the county.

### IV

The final contention of the appellants is that both Ordinance No. 157 and Resolution No. 20 are invalid because, they claim, they are based on contracts and are special interest legislation, and further, because the property owners reserved the right to withdraw their consent to annexation during the pendency of the proceedings.

Assuming without deciding that the rule against zoning by contract is applicable to initial zoning of newly annexed property, we do not believe that the circumstances before us demonstrate such an illegality. The appellants base their argument here on speculation, not fact. There is no evidence supporting the appellants' assertion that the property owners and the town of Bel Air entered into any agreement in regard to the zoning

of their respective properties. The most that can be extracted from the record is that the property owners let their desires in regard to zoning be known and that the town fulfilled these desires. Ordinance No. 157 makes no reference to any agreement and cannot be termed special interest legislation since it applies to any property which is proposed to be annexed. Nor does Resolution No. 20 make any reference to any agreement, or state any conditions to the annexation or zoning.

Although the petition for annexation did contain a provision that the property owners could withdraw their consent to annexation prior to its completion, it would seem that this right would be theirs regardless of such a provision. Resolution No. 20 contained no reference to this "condition". The appellants assert that "the basic deal appears to have been that the Julios would get the otherwise unavailable but essential sewerage for their complex of stores, while the town hoped to get expanded borders, taxable base and someone to help pay for the very expensive Area 6 sewerage facilities." But there is no indication in Resolution No. 20 that annexation or zoning is conditioned on such sharing of costs. As previously noted, the town, by a resolution passed in 1957, has required that a property owner consent to annexation in order to receive sewer service from the town.

We think the case before us presents no problem of zoning by contract, since the legislative body of Bel Air has made no provision in Ordinance No. 157 or Resolution No. 20 conditioning their action in zoning on annexation upon any acts of the property owners. *Pressman v. Baltimore,* 222 Md. 330, 160 A. 2d 379 (1960).

We think the decree appealed from must be affirmed. In view of our disposition of the case, we need not consider the appellees' contention that the appellants did not have standing to bring this suit.

*Decree affirmed; appellants to pay the costs.*