No. 21318.

GUY TANNER, ET AL. *v.* CITY OF BOULDER, COLORADO, ET AL.

(405 P.2d 939)

Decided September 13, 1965. Rehearing denied October 11, 1965.

174

James H. Snyder, for plaintiffs in error.

Neil C. King, Sanford D. Coleman, for defendants in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

Tanner and Quinby, as residents and taxpayers of the city of Boulder and on behalf of themselves and all other persons similarly situated, brought an action against the city of Boulder and certain of its officials, seeking invalidation of a completed annexation by Boulder of

certain undeveloped land owned by one Hindry. The trial court upon hearing granted the defendants' motion to dismiss, holding that Tanner and Quinby were not "aggrieved persons" within the meaning of C.R.S. '53, 139-11-6, and that accordingly they had no standing to institute the instant proceeding. Upon review this court reversed the judgment of the trial court dismissing the complaint of Tanner and Quinby, and held that Tanner and Quinby being residents and taxpayers of Boulder *were* "aggrieved persons" within the meaning of the statute, and hence did have sufficient standing to maintain the action. The matter was thereupon remanded to the trial court with the direction to "reinstate the complaint and proceed to a hearing on the merits." See *Tanner v. Boulder*, 151 Colo. 283, 377 P.2d 945.

The complaint was then reinstated by the trial court. In due time the defendants filed a motion for a summary judgment in their favor, the motion being supported by certain affidavits and other various and sundry evidentiary matter, all of a documentary nature. Upon hearing this motion was granted, and the trial court for a second time entered a judgment dismissing Tanner and Quinby's several claims for relief. By writ of error Tanner and Quinby again seek reversal of the judgment of the trial court, contending that not yet have they been afforded a "hearing on the merits."

Tanner and Quinby, who will hereinafter be referred to as the plaintiffs, contend that the trial court committed grievous error in granting the defendants' motion for summary judgment and in support of their position they urge the following:

1. the petition for annexation is defective and does not comply with the several requirements contained in C.R.S. '53, 139-11-3, in that the petition is conditioned upon the subject property being zoned "B-1, Business District" by the City of Boulder simultaneously with any annexation thereof;

2. the resolution of the city council of Boulder ac-

cepting the petition for annexation and the subsequent councilmanic ordinance purporting to annex the subject property are both defective because each contained two subjects, *i.e.,* annexation and zoning, all in violation of the charter of the city of Boulder which provides that "all ordinances and resolutions shall be confined to one subject clearly expressed in the title";

3. the annexation ordinance was defective and therefore a nullity because it was not published in final form in a daily newspaper of the city of Boulder at least ten days prior to its final passage, as required by section 18 of the charter of the city of Boulder; and

4. the city of Boulder "has failed to comply with the procedural requirements" set forth in C.R.S. '53, 139-11-1 through 9.

In our view the plaintiffs' several contentions are without merit and we shall demonstrate that such is the case by a consideration of each of plaintiffs' several contentions.

In considering plaintiffs' initial contention that the petition for annexation was defective because it contained a request that the subject property be zoned "B-1, Business District," certain matters—all of record—help to put this request in its proper context. Prior to this annexation the subject property under existing zoning regulations of the county of Boulder was zoned Industrial, Business and Transitional. As of the time of this annexation a zoning ordinance of the city of Boulder provided that any territory hereafter annexed to the city of Boulder would come into the city as R-1, Residence District, "except that the city council upon recommendation of the city planning board may annex any territory as any other zoning district, provided, that all resolutions, notices and ordinances enacted to effect such annexation contain and designate therein a description of the zoning district which shall apply to the territory to be annexed." It was in this setting that Hindry in his petition for annexation—which petition,

of course, need not have been accepted by Boulder—also included a request that the subject property be zoned "B-1, Business District."

From the foregoing it is quite clear that zoning property, as it is annexed into the city of Boulder, does not violate any provision of the zoning ordinance of the city of Boulder. On the contrary, the ordinance set out above clearly provides for such. Nonetheless plaintiffs' position is that a petition for annexation which contains a request for a particular zoning is a nullity because such is not provided for by C.R.S. '53, 139-11.

■■ C.R.S. '53, 139-11, contains no language which would prohibit one who seeks annexation to a city from requesting that his property, if annexed, be zoned in a particular manner. C.R.S. '53, 139-11-3, also provides that all petitions which substantially comply with the several statutory requirements "shall be deemed sufficient." Under these circumstances we now hold that Hindry's petition for annexation did substantially comply with the several requirements of C.R.S. '53, 139-11.

Plaintiffs next contend that both the resolution of the Boulder city council accepting the petition for annexation and the subsequent ordinance purporting to annex the subject property are invalid because each contained two separate subjects, *i.e.,* annexation and zoning, all in violation of the charter provision that ordinances and resolutions shall be confined to one subject clearly expressed in the title. Our attention has not been directed to any prior decision of this court relating to the propriety of a municipality annexing property and then zoning the property in the same ordinance. Plaintiffs suggest, however, that this matter has already been resolved by us in *Tanner v. Boulder, supra.* With this suggestion we do not agree. This issue, in our view, was not resolved by us in *Tanner v. Boulder, supra,* but is properly before this court in the instant proceeding.

In this regard, defendants point out, by way of ex-

ample, that in *Nelson v. Farr,* 143 Colo. 423, 354 P.2d 163, and *City of Colorado Springs v. Kitty Hawk Development Co.,* 154 Colo. 535, 392 P.2d 467, the annexing municipality both annexed and zoned the property thus annexed in the same ordinance. It is conceded, however, that the precise issue now at hand was not raised in either of those cases.

In this general connection, see 37 Am. Jur., p. 759, where it is said:

"Occasionally, a section of the charter of a municipality provides that every ordinance of the board of commissioners shall embrace only one subject, which shall be clearly expressed in its title, and that if any subject is embraced in any ordinance contrary to the provisions of this section, such ordinance shall be void only as to so much of the ordinance as is not expressed in the title thereof. The term 'subject' as used in such provisions is to be given a broad and extended meaning, so as to allow the legislative municipal body full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Matters which are apparently comprised of two distinct and separate subjects do not constitute the forbidden duplicity of subject, in the meaning of such provision, unless they are incongruous with and diverse to each other. While such a provision is mandatory, it is to be construed liberally. It is not intended nor should it be so construed as to prevent the municipal legislative body from embracing in one act all matters properly connected with one general subject."

In *Beshore v. Town of Bel Air,* 237 Md. 398, 206 A.2d 678, the Court of Appeals of Maryland was faced with

the problem now presented to this court, namely, may a municipality annex land and also zone the land that is thus annexed in one and the same ordinance in the face of the requirement that two subjects may not be embodied in one ordinance. The Maryland Court of Appeals held that such did not offend the prohibition against a duality of subject matter in one ordinance, and in so holding said:

\* \* \*

". . . . We agree, and hold that the fixing of zoning classifications for newly annexed property is properly includable in a resolution providing for annexation by a municipality which has an authorized planning and zoning commission . . . ."

\* \* \*

". . . . If several sections of the law refer to and are germane to the same subject matter, which is described in its title, it is considered as embracing a single subject, and as satisfying the requirements of the constitution in this respect.

\* \* \*

"As we have seen, the fixing of zoning classifications for newly annexed land is a proper condition and circumstances of annexation and thus it is germane to the subject . . . ."

 We approve of both the result and rationale of *Beshore v. Town of Bel Air, supra,* and accordingly reject plaintiffs' contention that the resolution and ordinance of the city of Boulder are invalid because each is claimed to embrace two discordant subjects in the same resolution or ordinance. Instead of being discordant subjects, they are on the contrary quite germane and very much interrelated. Finally, in this connection, see Rhyne, Municipal Law (1957), pp. 227-228, where it is stated that "to fall within the prohibition [that an ordinance embrace but one subject] a statute and ordinance must embrace two or more dissimilar or discordant

subjects that do not have a reasonable legitimate connection."

Plaintiffs next contend that the annexing ordinance is void because it was not published in final form in a daily newspaper at least ten days prior to its final passage as required by Section 18 of the Boulder charter. Section 18 of the Boulder charter provides, in part, as follows:

"Every proposed ordinance shall be published once in full with all amendments in final form in a daily newspaper of the City, at least ten days before its final passage. Within five days after such final passage, it shall again be published once in a daily newspaper, and shall not take effect for thirty days after final passage, except that an emergency ordinance shall take effect upon passage, and be so published on the following day . . . ."

Boulder's response to this argument is that the annexation ordinance was an "emergency measure" and being an emergency measure no publication prior to final passage was required. In this connection the defendants rely upon section 17 of the Boulder charter, which reads as follows:

"*Emergency measures.* No ordinance shall be passed finally on the date it is introduced, except in cases of emergency, for the preservation of the public peace, health or property, and then only by a two-thirds vote of the councilmen present. The facts showing such urgency and need shall be specifically stated in the measure itself . . . ."

It is agreed that the only publication of the annexation ordinance was on the day following its introduction and final passage. The defendants contend that such meets the requirements for an "emergency measure," while plaintiffs counter by saying that though they do not contend that there was not a "bona fide" emergency, still "emergency measure" or not, the ordinance under applicable charter provisions was required

to be published in final form at least ten days before its final passage.

Stated affirmatively, section 17 of the Boulder charter provides that an emergency measure may be introduced and then passed finally on the same date it is introduced. Section 18 then provides that an emergency measure shall take effect upon passage, "and be so published on the day following." When sections 17 and 18 of the Boulder charter are read together it is quite evident that the requirement that an ordinance be published in final form at least ten days prior to final passage does not apply to "emergency measures." It is a bit difficult to conceive just how an "emergency" ordinance may be "passed finally on the date it is introduced," if at the same time it must be published in *final form* at least ten days prior to final passage. Such is true unless we are prepared to hold that an ordinance, even though it be an emergency ordinance, must be published in *final form* at least ten days prior to the date when it is *introduced!* All of which would be to inject a new and rather novel concept into the municipal law-making process. In *Greenberg v. Lee,* 196 Ore. 157, 248 P.2d 324, at page 333, the Supreme Court of Oregon commented upon the reasons for permitting an "emergency" measure to be enacted on the day of its introduction, whereas all other ordinances under applicable charter provision were required to have three public readings and the elapse of at least one week between introduction and final passage. Suffice it to say that we perceive no error by the trial court in this regard.

Finally, plaintiffs complain that their so-called fourth claim wherein they alleged that this attempted annexation "failed to comply with the procedural requirements" of C.R.S. '53, 139-11, was under the circumstances so broad as to *not* be subject to a motion for summary judgment. In this particular claim the plaintiffs originally alleged that the "non-contiguous

boundaries of the subject property do not coincide with the center lines of established streets, roads, or highways adjacent thereto." However, the plaintiffs later received permission from the trial court to delete this particular allegation from their fourth claim for relief. The fourth claim then amounted to little more than a "shotgun" allegation that the defendants had failed to comply with the several requirements of the annexation statute, *i.e.*, C.R.S. '53, 139-11, without pointing out with any degree of specificity whatsoever the procedural steps with which the defendants allegedly failed to comply.

On the other hand, the record before us affirmatively shows that the several requirements of C.R.S. '53, 139-11, as concerns the petition for annexation, the resolution accepting the petition, the notice, the annexation ordinance proper, and the filing thereof with the County Clerk and Recorder were all met and were complied with in all essential particulars. No counter-affidavit, which might in some manner have pointed out the procedural steps which the plaintiffs believed the defendants failed to meet, was filed. On this state of the record, then, the action of the trial court granting defendants' motion for summary judgment was proper.

The judgment is affirmed.