RICHARD FRENCH, Plaintiff-Appellant, *v.* THE VILLAGE OF LINCOLNSHIRE *et al.,* Defendants-Appellees.

(No. 72-390; 

Second District (1st Division)—August 25, 1975.

Collins, Stepanich & Collins, of Waukegan, for appellant.

John F. Grady, of Waukegan, Ancel, Thorpe, Kasson & Jenkins and Maurice J. McCarthy, both of Chicago, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff's original complaint against the Village of Lincolnshire and the defendant land developers sought to have a certain preannexation agreement terminated because of certain alleged defaults and the real estate covered thereby rezoned to R-3 Residential. The trial court, on motion, dismissed the complaint and the first and second amended complaints. On appeal, the plaintiff contends (1) that he has standing to prosecute such an action; (2) that the developers breached their agreement by not conveying certain land to the Village for a park and constructing tennis courts thereon; and (3) that said premises should therefore be rezoned to R-3 Residential as provided in the agreement. We conclude that, on the pleadings, it is clear that no default occurred and we therefore affirm the dismissal without reaching the plaintiff's other contentions.

On August 11, 1970, the defendant owners and developers entered into a preannexation agreement with the Village of Lincolnshire, providing for a planned-unit development on a tract of land which was to be annexed by the Village. The development was to consist of office buildings

on one part of the tract, apartments and town houses on another part, and single-family homes on the remaining part. The apartments were to be separated from the single-family homes by a 10-acre park. The developers were to convey fee simple title to the park (subject only to such conditions as were agreeable to the Village) to the Village when it approved the first final plat of subdivision or by June 1, 1971, whichever occurred first. This paragraph of the agreement also provided that the developers would construct four double tennis courts in the park prior to conveying it to the Village. The Village agreed the property would be zoned R-4 with a special use permit for a planned development. However, if the owners or developers failed to perform without the consent of the Village the real estate would automatically be rezoned R-3 (Single Family Residence District) and the special use permit would be revoked.

Another paragraph of the agreement provided that the developers and the Village could extend the time within which any required act might be performed. Pursuant to the preannexation agreement, the land in question was annexed to the Village and zoned to permit the uses specified by the agreement. Shortly after the annexation, a number of residents of the Village filed suit against the Village and the developers in the Circuit Court of Lake County, under Cause No. 70 MR 114, alleging that the agreement, the annexation and the zoning ordinance adopted pursuant to the agreement were invalid for various reasons. The plaintiffs in that case prayed that the preannexation agreement, the annexation and the zoning ordinance be declared null and void and that the developers be restrained from proceeding with the planned unit development. Two of the plaintiffs in that case were Richard French and Thomas J. Troestler, who were the original plaintiffs in the instant case. On March 1, 1971, the former case was dismissed as to French, Troestler and other plaintiffs, with prejudice; however, the remaining plaintiffs in that case proceeded to trial and a judgment was rendered in favor of the Village and the developers. The court held that the preannexation agreement and the zoning ordinance were valid. The plaintiffs in Cause No. 70 MR 114 filed a notice of appeal. On December 30, 1971, they voluntarily dismissed their appeal.

On February 25, 1972, the plaintiffs French and Troestler filed a complaint alleging that the developers had failed to convey the 10-acre park prior to June 1, 1971, and had failed to construct the tennis courts, that they had been damaged by this failure since they had been deprived of the use of the park and the tennis courts, and praying that the agreement be revoked and declared null and void, that the granting of the special use permits be declared illegal, null and void and that the property be zoned residential. On August 4, 1972, the action was dismissed with

prejudice for lack of standing and failure to state a proper class action. French (not Troestler) then filed an amended complaint which likewise was dismissed with prejudice, and the plaintiff's motion to file a second amended complaint was at that time denied. Nevertheless, on September 26, 1972, French (again without Troestler) filed a second amended complaint containing the same basic allegations described before except that plaintiff alleged that the defendant had conveyed the 10-acre park but had done so after an improper extension of time and subject to certain allegedly improper conditions. In the defendants' sworn motion to dismiss, it was set out that on April 11, 1972, the developers delivered to the Village a deed to the 10-acre park containing certain conditions and on that same date the Village adopted an ordinance accepting the deed. All members of the Village board, including the original plaintiff Thomas J. Troestler, voted in favor of the ordinance. In the same ordinance, the trustees unanimously authorized the mayor and the village clerk to enter into an agreement with the developers extending the time for construction of the tennis courts. Pursuant to the ordinance, a written agreement was entered into between the developers and the Village, dated May 30, 1972, extending the time for construction of the tennis courts to August 29, 1972, or 90 days after the Village designated the location of the courts, whichever occurred later.

This second amended complaint was dismissed with prejudice on September 27, 1972, and on October 25, 1972, plaintiff French appealed. Contrary to the assumption of both parties Troestler did not join in the first or second amended complaints or in the notice of appeal.

We shall pass immediately to the plaintiff's *second* proposition—that the developers breached said agreement by not conveying certain land to the Village for a park and by not constructing tennis courts thereon.

It is true that the conveyance of the park was conditional. But the two conditions were: (1) that the property be used solely for a public park and that any portion used for some other purpose would revert back to the grantor; (2) that the conveyance would be null and void if the pre-annexation agreement were adjudicated invalid or if the developer should be restrained by the final action of the court from developing the land as provided for in the agreement.

■■ While these conditions were not exactly set forth in the preannexation agreement, they were implied. The city was only entitled to receive 10 acres for park use and had no right to use the property for any other purpose. (Compare *Trustees of Schools v. Braner* (1874), 71 Ill. 546.) Thus the provision for reversion was proper. And as to the second point, it is obvious that if the agreement were declared invalid or the developers barred from developing the annexed territory, the whole con-

sideration for the conveyance would fall, and with it the conveyance itself. (12 Ill. L.&Pr. *Contracts* § 97 (1955).) Furthermore, the agreement provided that the conveyance might be made subject to such conditions as the Village agreed to and by accepting the conveyance without making any objection the Village did agree to the conditions.

The plaintiff also contends that the tennis courts (now complete) were not constructed on time. These delays were consented to by the Village either expressly or impliedly. And admittedly, the agreement expressly provided that the parties may extend the time for performance and that the automatic rezoning was to occur only if the owners or developers fail to perform any part *without the consent of the Village*. But the plaintiff contends that these provisions were improper and that no extension could be made without an amendment, which by statute requires public notice and hearing.

■■■ Section 11—15.1—2 of the Cities and Villages Act (Ill. Rev. Stat. 1973, ch. 24, par. 11—15.1—2) provides that such preannexation agreement may include "any other matter not inconsistent with the provisions of this Code, nor forbidden by law." For example, it is proper to provide, that, under certain circumstances, a preannexation agreement will become null and void. (*Elm Lawn Cemetery Co. v. City of Northlake* (1968), 94 Ill.App.2d 387, 237 N.E.2d 345, *appeal denied* (1969) 39 Ill.2d 625.) If the agreement can provide the terms under which it is nullified, it can equally provide for the extension of time of performance. While it is true that any action taken by corporate authorities which if applied to the property would be a breach of the agreement will not apply to it without an amendment of such agreement, such provision of the statute is not applicable here. The extension of time by the authorities is not a breach of *their* obligations towards the owner and developer. Rather, this particular provision in the statute was intended to apply to such actions as the alteration of zoning ordinances which if applied to the particular property would prevent a use agreed to in the preannexation agreement.

We therefore conclude that, on the pleadings, it is clear that no default on the part of the developers occurred, and we therefore affirm the dismissal without reaching the plaintiff's other contentions.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.