**GERALNES B.V., a Netherlands corporation; Manikin Investments B.V., a Netherlands corporation; and Dolbos B.V. a Netherlands corporation, Plaintiffs,**

v.

**CITY OF GREENWOOD VILLAGE, COLORADO, a municipal corporation; et al., Defendants.**

No. 83–K–1132.

United States District Court,
D. Colorado.

March 23, 1984.

David G. Palmer, William W. Maywhort, Holland & Hart, Denver, Colo., for plaintiffs.

Harris D. Sherman, Andre M. Reiman, Arnold & Porter, Denver, Colo., and J. Mark Hannen, Banta, Hoyt, Banta, Greene, Hannen & Everall, Englewood, Colo., for City of Greenwood Village.

John W. Madden, III, Brownstein, Hyatt, Farber & Madden, Denver, Colo., for William J. Klein.

I. Tom Bieging, Morrato, Bieging, Burrus & Colantuno, P.C., Englewood, Colo., for Tech Center Bldg.

Jerry Percy, Corporate Counsel, Robert A. Holmes, Patrick F. Kenney, Fairfield & Woods, Denver, Colo., for Chesapeake Bay Group and Columbia Savings & Loan.

Richard O. Campbell, H. Wayne Leiser, Montgomery, Little, Young, Campbell & McGrew, P.C., Englewood, Colo., for United Airlines, Inc.

Robert L. Morris, Davis, Graham & Stubbs, Denver, Colo., for Rosenberg Real Estate Equity Fund-I, Inc.

Joseph M. Montano, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for Great-West Life Assurance Co.

Hal B. Tudor, Morrison & Foerster, Denver, Colo., for I.T.C. Orchard Plaza Corp.

H. Thomas Coghill, Coghill & Goodspeed, Denver, Colo., for Block Five Partnership.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The plaintiffs in this action are three Dutch corporations which are successors in interest to property located in the Denver Technological Center and once owned by Denver Technological Center, Inc., a Colorado corporation. Plaintiffs allege that the defendant City of Greenwood Village "has engaged in a course of conduct [since September of 1981] which has had the result of frustrating the development of the DTC-South Property pursuant to a [1975 memorandum agreement] and Ordinance No. 6."

Amended Complaint at 14. Plaintiffs have asserted 15 claims for relief. The matter is now before me on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. A discussion of the facts surrounding this action is essential before examining the issues raised by this motion.

The Denver Technological Center (Tech Center) is an office and commercial park located in the City and County of Denver, the City of Greenwood Village and unincorporated Arapahoe County. This litigation centers around an area of land located in the Tech Center known as "DTC-South Property." The City of Greenwood Village annexed the Tech Center pursuant to Ordinance No. 3, Series of 1967 on April 16, 1967. At that time, substantially all the land in the Tech Center including the DTC-South Property was owned by Denver Technological Center, Inc. (DTC).

In April of 1975, the city in cooperation with DTC and others, adopted Ordinance No. 2, Series of 1975 which created a new zoning classification known as "Town Center District." The Town Center ordinance was designed to emphasize long term planning and mixed use development.[1] One of the characteristics of the Town Center District was the establishment of a land use "bank account" for the entire district. The "bank account" represented the extent of permissible construction and required open space within the overall zoned area.[2]

After adoption of the 1975 Town Center District zoning ordinance but before the DTC-South Property was designated as a

---

1. "Recognizing the complexities inherent in the development of modern urban centers of employment, the ordinance provided for the establishment of a complex, mixed use center on a total (rather than lot by lot) basis, thereby avoiding many of the rigidities (e.g., setbacks, lot lines, etc.) associated with conventional zoning schemes and classifications. In so doing, the ordinance offered the advantages of flexibility and certainty of development to those lands designated for inclusion within the Town Center District." Amended Complaint at 5.

2. "The 'bank account' for a designated Town Center District is established by calculating the maximum amounts of building ground coverage, parking ground coverage and gross floor area of buildings, including the minimum amount of open space allowable according to the gross land acreage within the district. As development occurs within the district, the resulting building and parking ground coverage as well as the gross floor area of the buildings is withdrawn from the remaining allowable coverages contained in the 'bank account.' As areas within the district are dedicated for use as open space, these areas are deposited in the 'bank account' as credits toward the required minimum." Amended Complaint at 5–6.

Town Center District, the Colorado Supreme Court in *Johnston v. City Council of the City of Greenwood Village,* 189 Colo. 345, 540 P.2d 1081, 1082 (1975) invalidated the annexation of the Tech Center under Ordinance No. 3, Series of 1967. As a result, numerous citizens and landowners of the disconnected area filed a petition for reannexation on September 29, 1975. Two other petitions were filed on October 27, 1975. None of these petitions was signed by DTC.

█ The DTC-South Property consists of more than 20 acres and is valued in excess of $200,000. The boundaries of DTC-South extend across the entire width of the city from Belleview Avenue on the north to Orchard Road on the South. The consent of DTC was a legal prerequisite[3] to including DTC-South within the reannexation. Therefore, the city asked DTC to agree to the annexation of the DTC-South Property under the provisions of the Municipal Annexation Act of 1965, Colo.Rev.Stat. §§ 31–12–101 *et seq.* DTC refused to consent to the proposed reannexation, but did enter into a pre-annexation agreement with the city on December 1, 1975.

Under the contract, DTC agreed to forbear any action challenging the validity of the contemplated reannexation of the Tech Center until the outcome of the requisite reannexation election. The city agreed to the following:

To share with DTC certain cost obligations associated with road improvements on and adjacent to the DTC-South Property; to validate the then-existing streamlined subdivision procedure for the DTC-South Property, which procedure permitted the property to be divided into 'superblocks' without specifying each and every lot contained therein; to consent to the inclusion of the DTC-South Property within the service area of the Castlewood Water District; to seek

and obtain the approval of DTC before including the DTC-South Property within any special assessment district prior to a specified date; to incorporate the Master Development Plan for the DTC-South Property into the City's overall master plan; and to repeal in its entirety Ordinance No. 2, Series of 1975, and to enact in its place a new Town Center District zoning ordinance, which would promptly and continuously attach without modification to the DTC-South Property and which would reflect the following changes from the provisions of Ordinance No. 2, Series of 1975:

(a) The deletion of all restrictions upon building heights set forth in the 1975 ordinance;

(b) The deletion of requirements set forth in the 1975 ordinance pertaining to the number of residential dwelling units;

(c) The deletion of certain landscaping requirements set forth in the 1975 ordinance;

(d) The deletion of all requirements set forth in the 1975 ordinance pertaining to semi-annual review and approval by the City of the Master Development Plan and 'general plans' of DTC concerning the DTC-South Property.

(e) The deletion of the requirement set forth in the 1975 ordinance for the City's approval of any land use not specifically enumerated therein; and

(f) The deletion of all provisions set forth in the 1975 ordinance concerning the involvement of the City's Planning and Zoning Commission in the planning and development matters affecting the DTC-South Property.

The city also agreed that the revised Town Center District zoning ordinance would retain the concept of the land use "bank account." Thus, each site within the DTC-South Property, but not then under the ownership or control of DTC, would receive a pro rata share of the overall

---

**3.** Land held in excess of 20 acres and with an assessed value in excess of $200,000 for the year preceding the annexation shall not be included in a unilateral annexation without the written consent of the owner or owners. *See Pomponio*

*v. City of Westminster,* 178 Colo. 80, 496 P.2d 999 (1972); *Adams v. City of Colorado Springs,* 178 Colo. 241, 496 P.2d 1005 (1972). *See also* Colo.Rev.Stat. § 31–12–105 (1973).

available density, determined according to the ratio of the site area to the total area of the district. DTC retained the right freely to transfer and allocate densities among the sites it owned, as long as the overall densities did not exceed the limit set forth in the contract. The city further agreed to retain the same formula for calculating the bank account as specified in the 1975 ordinance. Thus, as applied to the DTC-South Property, the revised Town Center District zoning ordinance established a maximum building ground coverage of 7,418,771 square feet, a maximum parking ground coverage of 7,418,771 square feet, a maximum gross floor area of buildings of 22,-256,313 square feet, and a minimum amount of open space of 5,564,078 square feet.

On December 9, 1975 the citizens of the City of Greenwood Village voted by a margin of more than 15 to 1 to reannex the Tech Center. The city officially approved the annexation by passing Ordinance No. 18, Series of 1975. As a result, DTC commenced litigation against the city in Arapahoe County District Court (Civil Action No. 35435) asking the court to declare Ordinance No. 18, Series of 1975 null and void insofar as that ordinance sought to annex the DTC-South Property or in the alternative that the entire annexation was null and void.

On March 2, 1976 the city passed Ordinance No. 6, Series of 1976 under which it adopted the Town Center District zoning ordinance. The city council simultaneously amended the ordinance to apply Town Center zoning to the DTC-South Property pursuant to Ordinance No. 7. The DTC-South Property thereby became subject to the provisions in Ordinance No. 6. On March 8, 1976 the city passed Resolution No. 7, adopting a Master Development Plan for the DTC-South Property. The plan had been prepared by James Bowers and Associates on behalf of DTC.

DTC voluntarily dismissed without prejudice its lawsuit challenging the annexation ordinance on March 22, 1976. Soon after that date, DTC and its successors commenced development of the DTC-South Property pursuant to the then most currently amended Master Development Plan. Plaintiffs now allege that beginning in September 1981 and continuing to the present date, the city has attempted to frustrate the development of the DTC-South Property by engaging in the following conduct:

(a) Repeated assertions by the City of a right to approve, modify or reject amendments to and revisions of the Master Development Plan for the DTC-South Property, notwithstanding said plan's compliance with the provisions of Ordinance No. 6;

(b) Repeated refusals by the City to issue building permits in accordance with amendments to and revisions of the Master Development Plan for the DTC-South Property, notwithstanding said plan's compliance with the provisions of Ordinance No. 6;

(c) Repeated assertions by the city of a right to regulate the densification of individual parcels within the DTC-South Property, including a right to approve, modify or reject allocations of density among individual development sites within the DTC-South Property;

(d) Repeated refusals by the city to recognize the right of DTC or its successors to shift the location of uses or the intensity of uses between and among various superblocks within the DTC-South Property;

(e) Repeated assertions by the city that development of the DTC-South Property is limited to the density levels appearing on the 1976 Plan, notwithstanding the contrary provisions of the contract and Ordinance No. 6;

(f) Repeated assertions by the city of a right to superimpose additional unspecified planning and development requirements upon the DTC-South Property through amendments to Ordinance No. 6, Series of 1976, notwithstanding the contrary provisions of the contract;

(g) The issuance of numerous public statements by the City and its officers calculated to interfere, and which have

interfered with the prospective business advantage and existing contractual relations between DTC or its successors and third parties;

(h) The intentional delay by the City in the issuance of building permits for projects within the DTC-South Property, notwithstanding demonstrations by DTC or its successors that the requests for such permits were consistent with Ordinance No. 6 and the contract.

(i) The unilateral passage and application by the city of Ordinance No. 11, Series 1982, wherein the City established an unwarranted, unauthorized, burdensome and costly review and approval procedure for all amendments to and revisions of the Master Development Plan for the DTC-South Property, in direct conflict with the language of the contract and Ordinance No. 6.

(j) The unilateral passage and application by the city of Resolution No. 21, Series of 1983, wherein the city established an unwarranted, unauthorized, burdensome and costly review procedure for all amendments to and revisions of the Master Development Plan for the DTC-South Property, in direct conflict with the language of the contract and Ordinance No. 6.

(k) The failure to adopt, and repeated refusals to validate, the streamlined subdivision procedure which permits the DTC-South Property to be divided into 'superblocks' without specifying each and every lot contained therein.

Plaintiffs also seek declaratory relief and allege that the city is liable for inverse condemnation, breach of contract, damage to private property, impairing the obligation of contracts, law retrospective in operation, deprivation of constitutional rights, violation of antitrust laws, civil conspiracy, intentional interference with prospective business advantage, disparagement of property and punitive damages. Defendant City of Greenwood Village has moved to dismiss this action under Rule 12(b)(6)

F.R.Civ.P. for failure to state a claim upon which relief can be granted. In support of its position, the city makes the following claims:

(1) Plaintiffs are foreclosed from bringing this action by their failure to pursue exclusive remedies under Colorado law.

(2) The 1975 contract is void and unenforceable. Therefore, all claims in the complaint must be dismissed as they do not survive the unenforceability of the contract.

## I. COLO.R.CIV.P. 106

Defendant asserts that plaintiffs are barred by Colo.R.Civ.P. 106(a)(4) from objecting to the city's zoning actions, in which the maximum density of the Tech Center was limited to 11.2 million square feet. Defendant refers to the application of Town Center zoning to DTC-South Property through the passage of Ordinance No. 6, Ordinance No. 7 and Resolution No. 7. According to defendant, such actions are quasi-judicial and review in accordance with Colo.R.Civ.P. 106 is the exclusive remedy. Plaintiffs claim that defendant has mischaracterized their complaint and that they are not challenging the 1976 ordinances, since such ordinances were mandated by the contract. They also contend that the city's zoning actions did not limit development of the Tech Center to 11.2 million square feet. According to plaintiffs, the Town Center District zoning classification allows maximum development of 1.2 square feet of floor area for every square foot of land, or a maximum floor area for the Tech Center of over 22 million square feet. Plaintiffs seek to develop their property according to this maximum density figure and not the figure alleged by defendant.

Defendant is correct in asserting that zoning actions are quasi-judicial[4] and therefore come within the purview of Rule 106. In reviewing plaintiffs' amended complaint, however, I do not find that they are challenging the zoning of the DTC-South

---

**4.** *See City and County of Denver v. Eggert,* 647 P.2d 216, 222 (Colo.1982) ("Quasi judicial ac-

tion decides rights and liabilities based upon past or present facts.")

Property pursuant to Ordinance Nos. 6 and 7 and Resolution No. 7. Plaintiffs object to actions taken by the city in 1981 which constitute an alleged breach of the 1975 contract between the city and plaintiffs' predecessor in interest, DTC. Thus, Rule 106 does not apply since plaintiffs are not challenging any quasi-judicial actions taken by the city in 1976.

Plaintiffs, however, do challenge zoning ordinances enacted by the city after 1976. Plaintiffs have specifically asked me to enjoin the city from enforcing Ordinance No. 11, Series of 1982 and Resolution No. 21, Series of 1983. Defendant alleges that plaintiffs are precluded from challenging these actions since they are quasi-judicial and must be attacked within the 30 day limit of Rule 106(b).

■ Again, I disagree with defendant's interpretation of the applicability of Rule 106. That rule is designed to allow an individual to obtain review of governmental action on the grounds of abuse of discretion or lack of jurisdiction. *See Colorado Springs v. District Court*, 184 Colo. 177, 519 P.2d 325 (1975) (review limited to determination if inferior tribunal has abused its discretion); *LaJunta Easy Shops, Inc. v. Hendren*, 164 Colo. 55, 432 P.2d 754, 755 (1967). Also, the statute only applies if no available remedy exists for challenging the actions of an inferior tribunal. The plain language of the statute supports this conclusion:

> In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:
>
> (4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, *has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy.* (emphasis added)

Colo.R.Civ.P. 106(a)(4) (1973).

■ Plaintiffs are not challenging any abuse of discretion by the City of Greenwood Village for enacting Ordinance No. 11 and Resolution No. 21. Rather, plaintiffs oppose those actions as breaches of the contract. The availability of a breach of contract action is a sufficiently adequate remedy making Rule 106 inapplicable. This principle was upheld by the Colorado Court of Appeals in *Ebke v. Julesburg School District No. Re-1*, 37 Colo.App. 349, 550 P.2d 355 (1976), *aff'd*, 193 Colo. 40, 562 P.2d 419 (1977). In *Ebke*, a group of teachers sued to challenge a school board's decision to limit salary increases. The suit was initiated as a breach of contract action, based upon the statutory contract between the teachers and the school district. The trial court dismissed the suit because the teachers failed to proceed under Rule 106(a)(4). The court of appeals reversed stating:

> C.R.C.P. (a)(4), review in the nature of certiorari, is applicable where a party is attacking an action taken by a board. However, that section is directed to an action against the Board for exceeding its jurisdiction or abusing its discretion, *but permits relief only when there is no 'plain, speedy and adequate remedy,' and thus does not apply to the first claim where, as here, the plaintiffs allege a breach of a pre-existing contract.* (citations omitted) (emphasis added)

*Ebke*, 550 P.2d at 357. Thus, a plaintiff is barred from seeking relief under Rule 106(a)(4) when a breach of contract action is available. Plaintiffs in this case are not barred by Rule 106 from contesting the enactment of Ordinance No. 11 and Resolution No. 21, as those actions are alleged breaches of the contract between DTC and the city.

## II. STATUTE OF LIMITATIONS: COLO.REV.STAT. § 13–80–107

Defendant claims that any breach of the 1975 contract occurred in 1976, when defendant adopted in its Master Development Plan for the Tech Center a density limitation of 11.2 million square feet. Thus, this action which was initiated almost seven years after that breach is barred by the three year statute of limitations in Colo. Rev.Stat. § 13–80–107. Plaintiffs contend,

however, that the parties to the contract believed at the time of contracting that the agreement provided for 22 million square feet of floor area. Plaintiffs also contend that even if the Master Development Plan conflicted with the contract by imposing a density limitation of 11.2 million square feet, under Colorado law, the Master Plan does not impose binding limitations upon the parties.

■ Defendant's argument that plaintiffs have not satisfied section 13–80–107 will not support this motion to dismiss. First, plaintiffs are not challenging any actions taken by defendant in 1976. Plaintiffs object to the city's course of conduct since September 1981 which, according to plaintiffs, has frustrated the development of the DTC-South Property in violation of the 1975 contract. The three year statute of limitations therefore does not apply since this action was initiated well within that time period. Second, for purposes of a motion to dismiss, allegations of the complaint are to be taken as true and construed in the light most favorable to the plaintiff. *See Bryan v. Stillwater Board of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357 at 594 (1969). Plaintiffs, in their amended complaint, note that the 1976 Master Development Plan was a "flexible, nonbinding planning document, which served to establish general guidelines for the development of the DTC South Property." Amended Complaint at 12. The cases cited by plaintiffs in their brief opposing this motion also support the proposition that Master Development Plans are merely advisory.[5] Thus, even if the Master Development Plan imposed a density limitation of 11.2 million square feet, there could be no breach of the 1975 contract as the plan is not binding on the parties. Any action for breach of the

contract did not accrue upon the adoption of the plan in 1976.

## III. COLO.REV.STAT. § 31–12–116

■ Defendant alleges that Colo.Rev. Stat. § 31–12–116 precludes plaintiffs from challenging the annexation of the Tech Center and prevents plaintiffs from pursuing the remedy of disconnection. The pertinent provisions of that statute provide:

If any landowner or any qualified elector in the area proposed to be annexed or the board of county commissioners of any county from which area is being removed by such annexation believes itself to be aggrieved by the acts of the governing body of the annexing municipality in annexing said area to said municipality, such acts or findings of the governing body may be reviewed by certiorari in accordance with the Colorado rules of civil procedure.

(2) All such actions to review the findings and the decision of the governing body *shall be brought within forty-five days after the effective date of the ordinance, and, if such action is not brought within such time, such action shall forever be barred.* (emphasis added)

(4) Any annexation accomplished in accordance with the provisions of this part 1 shall not be directly or collaterally questioned in any suit action, or proceeding, except as expressly authorized in this section.

Colo.Rev.Stat. § 31–12–116(1), (2), (4) (1973). According to defendant, the contract between DTC and the city provided that any challenge to the annexation of the Tech Center would have to be made according to the certiorari procedures in section 31–12–116 of the Municipal Annexation Act. Defendant claims that plaintiffs are now precluded from challenging the annexation of the Tech Center since they have not complied with the 45 day limit in which

---

**5.** *See Theobald v. Board of County Commissioners*, 644 P.2d 942 (Colo.1982) ("[T]he master plan itself is only one source of comprehensive planning, and is generally held to be advisory only, and not the equivalent of zoning, nor

binding upon the zoning discretion of the legislative body."); *Margolis v. District Court*, 638 P.2d 297, 305 (Colo.1981); *Richter v. City of Greenwood Village*, 513 P.2d 241, 242 (Colo.App. 1973).

to challenge such annexation. Plaintiffs argue that they do not seek relief under section 31–12–116 of the annexation statute but pursuant to the contract which provides for a remedy of disconnection if the contract is breached. The provision of the contract which provides for disconnection reads:

> In the event of default by either party, the other shall have any remedy at law or in equity. *In addition, upon default by the City, DTC shall have the remedy of disconnection of the Property from the City in accordance with 31–12–119 C.R.S., 1973, as amended;* the City hereby acknowledging that default constitutes failure to serve. (emphasis added).

Memorandum Agreement at 8 (Dec. 1, 1975).

In reviewing the amended complaint, I find that plaintiffs are not challenging the 1975 annexation of the Tech Center. Plaintiffs seek disconnection from the city, which is clearly available according to the terms of the contract. Thus, plaintiffs' complaint will not be dismissed for failure to comply with Colo.Rev.Stat. § 31–12–116.

### IV. COLO.REV.STAT. § 31–12–119

Defendant claims plaintiffs have not met the requirements for disconnection under Colo.Rev.Stat. § 31–12–119 and thus are now precluded from seeking such relief. Plaintiffs claim that they are not seeking statutory disconnection but seek to enforce the "contractual" remedy of disconnection, as provided in the contract.

The terms of the contract providing for disconnection in case of default by the city are clear; "DTC shall have the remedy of disconnection of the Property from the City in accordance with 31–12–119 ... the City hereby acknowledging that default constitutes failure to serve." Memorandum of Agreement at 8 (Dec. 1, 1975). Defendant reads this language as granting the remedy of disconnection only if all of the requirements of § 31–12–119 are first met. Plaintiffs however, assert that a showing of a breach by the city of the agreement is all that is required for plaintiffs to pursue

their contractual disconnection remedy. Plaintiffs argue that the parties intended the contractual disconnection remedy to comply with section 31–12–119, but only within certain clear limitations. One of the limitations included changing the definition of "failure to serve" to mean the city's default on any of its obligations under the agreement, as opposed to the meaning provided in section 31–12–119. Defendant proposes that the statute controls what constitutes a failure to serve and the parties could not have contractually changed the statutory definition.

 In deciding whether plaintiffs must meet the requirements of section 31–12–119 before disconnecting, I must first determine if the provision for disconnection is ambiguous. The following principles will guide my decision; "A contract [provision] is ambiguous only if it is reasonably and fairly susceptible of more than one meaning; the fact that the parties disagree as to the meaning does not establish ambiguity." *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 695 (10th Cir.1981). *See also Union Rural Electric Ass'n Inc. v. Public Utilities,* 661 P.2d 247, 251 (Colo.1983). In ascertaining whether certain contract provisions are ambiguous, the language used must be construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all provisions of the agreement. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748, 750 (1978). Where the provision of an agreement is clear on its face, the provision must be enforced as written. *See Security Mutual Casualty Co. v. Century Casualty Co.,* 531 F.2d 974, 976 (10th Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976) (every contract must be interpreted according to its own terms); *In re Marriage of Stokes,* 43 Colo.App. 461, 608 P.2d 824, 829 (1979); *Munroe v. Lintner,* 539 P.2d 505, 507 (Colo.App.1975).

 I conclude that the provision at issue presents no ambiguity. The term "failure to serve" is explicitly defined in

Colo.Rev.Stat. § 31–12–119 as the failure of a municipality to "provide the same municipal services on the same general terms and conditions as the rest of the municipality receives." Since the parties have stated in this provision that disconnection shall be granted in accordance with section 31–12–119, plaintiffs must show a failure to serve as defined by the statute before bringing any action for disconnection. A mere breach of the agreement by the city will not support disconnection.

## V. ENFORCEABILITY OF THE 1975 AGREEMENT

The final issue to be decided is whether the 1975 contract between the city and DTC is void as an unlawful delegation of the city's police powers. Defendant argues that the 1975 agreement inhibits the city's zoning authority and is therefore unenforceable. Plaintiffs contend that defendant has failed to draw a distinction between a contract resulting in a complete surrender of a municipality's control of legislative functions, and a contract which merely places reasonable limitations on the police powers. Plaintiffs also argue that the 1975 contract is a valid and enforceable pre-annexation agreement which merely describes the particular zoning and development rights to be applied to annexed land.

It is fundamental that both annexation and zoning are legislative functions, *City of Louisville v. District Court*, 190 Colo. 33, 543 P.2d 67, 70 (1975), and that a "city cannot by contract deprive itself of any of its legislative powers, or government powers, ...." 10 E. McQuillin, The Law of Municipal Corporations § 29.07, at 230–31 (3d ed. 1981). However, preannexation agreements which impose certain zoning classifications as conditions of annexation have been upheld as valid and enforceable.

The Colorado Supreme court in *Tanner v. City of Boulder*, 158 Colo. 173, 405 P.2d 939 (Colo.1965) upheld as enforceable a petition for reannexation which requested that certain property, if annexed, be zoned as a business district. The court did not find that such a request infringed upon the City of Boulder's legislative funcions. Rather, the court found that the statute governing petitions for annexation did not prohibit such a request:

> [P]laintiff's position is that a petition for annexation which contains a request for a particular zoning is a nullity because such is not provided for by C.R.S. '53, 139–11.
>
> C.R.S. 53, 139–11 contains no language which would prohibit one who seeks annexation to a city from requesting that his property, if annexed, be zoned in a particular manner.

405 P.2d at 941.

The *Tanner* rationale can be applied to this case since there is no language in the Municipal Annexation Act, Colo.Rev.Stat. § 31–12–101, *et seq.* (1973 & Cum Supp. 1983) prohibiting the plaintiffs from entering into a preannexation agreement with the city which requests a certain zoning classification.

Other jurisdictions have upheld the validity of preannexation agreements which impose zoning restrictions. The court in *Mayor and Council of Rockville v. Brookeville Turnpike Construction Co.*, 246 Md. 117, 228 A.2d 263 (1967), cited the *Tanner* decision in upholding a preannexation agreement:

> It is clear that one seeking annexation may require a particular zoning classification as a condition to his agreeing to annexation, *Beshore v. Town of Bel Air*, 237 Md. 398, 416, 206 A.2d 678; *Tanner v. City of Boulder*, [158 Colo. 173], 405 P.2d 939, 941–42, and this is what [plaintiff] did. He insisted on R–20 zoning. The conditions the City insisted on were prerequisite to annexing, not rezoning, as to which there was a significant controversy, and the fact that an agreed upon zoning classification would accompany the annexation as a condition of the annexed land does not bring the rezoning within the Maryland rule that rezoning cannot be granted conditionally.

228 A.2d at 273. *See also Union National Bank v. Village of Glenwood*, 38 Ill.App.3d 469, 348 N.E.2d 226, 228 (1976) (village had authority to enter into preannexation agreement with owners of certain property that such property was to be zoned single family residential); *French v. Village of Lincolnshire*, 31 Ill.App.3d 537, 335 N.E.2d 29, 31 (1975) (preannexation agreement upheld, land in question was annexed to village and zoned to permit uses specified by the agreement); *Housing Authority of Melbourne v. Richardson*, 196 So.2d 489, 493 (Fla.Dist.Ct.App.1967) (cooperation agreement between city and housing authority in which city promised to make changes in zoning to accommodate housing project was valid and enforceable); *Beshore v. Town of Bel Air*, 237 Md. 398, 206 A.2d 678, 686 (1965) ("[T]he fixing of zoning classifications for newly annexed land is a proper condition and circumstance of annexation...")

Even though the Municipal Annexation Act and precedent support the enforceability of preannexation agreements, I must decide if the obligations incurred by the city under the contract were ultra vires and therefore unenforceable. Defendant cites a plethora of cases in support of the proposition that any contract limiting a city's zoning authority may not be enforced. The Colorado Supreme Court decision in *King's Mill Homeowners Association, Inc. v. City of Westminster*, 192 Colo. 305, 557 P.2d 1186 (1976) is cited by defendant as confirming the alleged unenforceability of the 1975 agreement. *King's Mill* involved an action by individuals and homeowner's associations challenging the validity of a rezoning ordinance. The ordinance was passed pursuant to an application by Perl Mack Companies to the City of Westminster. The application sought to have Westminster annex eight acres of a 119 acre tract of land and to rezone the entire 119 acre tract from residential to commercial. The city annexed the land and rezoned it in accordance with Perl Mack's request. The plaintiffs in *King's Mill* challenged the or-

dinance as illegal "contract zoning." In upholding the ordinance the court concluded that "[t]he power to impose conditions on rezoning is an exercise of the police power and such conditions are valid as long as they are reasonably conceived." 557 P.2d at 1191.

This language in *King's Mill* supports plaintiff's position. Accordingly, the city's act of agreeing to limit its zoning of the DTC-South Property was not an ultra vires act under *King's Mill*, but a valid exercise of its police powers.

Defendant also cites *City of Farmers Branch v. Hawnco, Inc.*, 435 S.W.2d 288 (Tex.App.1968), in support of its position. The Texas court of appeals in *Farmers Branch* was faced with a situation in which the appellee, who owned property which was annexed by the city and later rezoned from a business district to an apartment district, claimed that the city was contractually bound never to rezone his property. The court, finding no evidence of an agreement, stated as *dicta* that if there had been such an agreement, it would not have been valid. *Farmers Branch*, 435 S.W.2d at 291. Plaintiffs claim that *Farmers Branch* would only apply to agreements by a city "never" to re-zone property in the future. I agree.

In refuting appellees contention that he entered into a contract with the city, the court noted: "The language of Exhibit No. 9 does not constitute an agreement that the city would never in the future rezone the property." 435 S.W.2d at 291. Thus, according to *Farmers Branch*, the general prohibition against delegating legislative functions applies when a city completely surrenders its powers to rezone property for an indefinite period of time. This is not the case here where the City of Greenwood's obligations under the contract do not constitute a complete surrender of the ability to zone the DTC-South Property and are limited in time.[6] *Farmers Branch* therefore supports the enforceability of the 1975 contract.

6. The city's obligations under the contract end in January of 1999.

Another case which supports the enforceability of the contract is *Morrison Homes Corp. v. City of Pleasanton,* 58 Cal.App.3d 724, 130 Cal.Rptr. 196 (1976). The City of Pleasanton executed certain annexation agreements with a developer of property scheduled to be annexed. In one of the agreements, the city promised to provide new sewer connections and services to homes built by the developer upon the annexed land. When the developer sought declaratory relief and damages for the city's failure to provide the sewage services, the city asserted that its sewer committment was unenforceable as an invalid "attempt to contract away the legislative and governmental functions of future city councils." 130 Cal.Rptr. at 201. In rejecting the city's argument, the court described the scope of the general rule against contracting away legislative functions:

> The City correctly cites the general rule that a municipality may not 'contract away' its legislative and governmental functions. The effect of the rule, however, is to void only a contract which amounts to a city's 'surrender,' or abnegation of its control of a properly municipal function. (citations omitted)

130 Cal.Rptr. at 201. The court went on to say that no provision in any of the annexation agreements required the city to surrender its control of the annexation process or of its sewer operation. The same rationale applies to this case, since none of the provisions in the preannexation agreement constitute a total abnegation of control over the zoning of the DTC-South Property.

I conclude that the obligations incurred by the city pursuant to the 1975 agreement were not ultra vires but valid exercises of the police power. Thus, plaintiffs' complaint will not be dismissed on the grounds that the preannexation agreement is void.

THEREFORE IT IS ORDERED THAT:

The motion to dismiss is granted in part and denied in part.

Plaintiffs are precluded from asserting the remedy of disconnection from the City of Greenwood Village until they show a "failure to serve" as defined in Colo.Rev. Stat. § 31–12–119 (1973).

This case is set for a scheduling conference on April 19, 1984 at 8:00 a.m., in Courtroom 200.